CHARLES J. MOZZOCHI *v.* BRUCE S. BECK ET AL.
(13118)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued June 3—decision released July 28, 1987

*John R. Williams,* for the appellant (plaintiff).

*Joseph F. Skelley, Jr.,* with whom, on the brief, was *Carl F. Yeich,* for the appellees (defendants).

PETERS, C. J. The principal issue in this case is whether a cause of action for abuse of process may be brought to recover damages from attorneys who allegedly pursued litigation despite their discovery that their client's claim lacked merit. The plaintiff, Charles J. Mozzochi, filed a five count complaint charging the defendants, attorneys Bruce S. Beck and Kathleen Eldergill and the law firm of Beck & Pagano, with unlawful conduct in the nature of vexatious litigation, abuse of process and malpractice. The trial court, concluding that the plaintiff had failed to state any cause of action, granted the defendants' motion to strike the complaint and subsequently, at the plaintiff's request, rendered judgment in favor of the defendants. The plaintiff's appeal to the Appellate Court was transferred to this court. We find no error.

In an appeal challenging a ruling on a motion to strike, we must take the facts to be those alleged in the plaintiff's complaint, and must construe the complaint in the manner most favorable to the plaintiff. *Verdon* v. *Transamerica Ins. Co.,* 187 Conn. 363, 365, 446 A.2d 3 (1982); *Sheets* v. *Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 472, 427 A.2d 385 (1980). According

to the complaint, at some time prior to May 7, 1982, the defendants instituted an action on behalf of Walter Muszynski against the present plaintiff. An amended complaint in the Muszynski action, filed on August 13, 1982, alleged that the plaintiff had falsely and maliciously accused Muszynski of having falsified his original job application with the Glastonbury police department and of having been arrested by federal agents for a felony. A subsequent amendment to the Muszynski complaint alleged that the plaintiff had falsely and maliciously accused Muszynski of having wrongfully obtained unemployment compensation benefits. The defendants persisted in filing these amended complaints and otherwise continued to pursue the Muszynski action despite the fact that they had learned that the plaintiff's statements about Muszynski were true and that the Muszynski action was without merit. The defendants pursued this course of conduct for the unlawful, ulterior purpose of inflicting injury upon the plaintiff and enriching themselves and their client, Muszynski.

The trial court determined that these allegations did not suffice to state a cause of action. With respect to a possible claim for vexatious litigation, the court determined that the complaint was defective for failure to allege that the underlying action "was initiated maliciously, without probable cause, and terminated in the plaintiff's favor." *Blake* v. *Levy,* 191 Conn. 257, 263, 464 A.2d 52 (1983); *Vandersluis* v. *Weil,* 176 Conn. 353, 356, 407 A.2d 982 (1978). The court held that the complaint did not state a claim for abuse of process because it failed to allege that the defendants had engaged in overt acts for a collateral purpose unrelated to the lawsuit that they were prosecuting. *Varga* v. *Pareles,* 137 Conn. 663, 667, 81 A.2d 112 (1951). Finally, the court concluded that the plaintiff's complaint could not support an action for legal malpractice grounded in the

provisions of the Code of Professional Responsibility, because it did not allege that the plaintiff had ever been the foreseeable beneficiary of the legal services rendered by the defendants for their client, Muszynski.

The plaintiff's appeal does not contest the trial court's ruling on vexatious litigation. The plaintiff maintains, however, that the trial court erred in holding that his complaint failed to state a claim either for abuse of process or for legal malpractice. These claims of error warrant separate consideration.

I

The plaintiff asserts that he has stated a cause of action for abuse of process by alleging, in his complaint, that the defendants: (1) filed amendments to the pleadings in the Muszynski action when the defendants knew that the allegations of those amendments were false; and (2) refused to withdraw the Muszynski action after learning that it was utterly without merit. This conduct constituted abuse of process, according to the plaintiff, because it was allegedly undertaken for "an unlawful ulterior purpose, to wit: to inflict injury upon the plaintiff and to enrich themselves and their said client although they knew that their said lawsuit was without merit."

In our assessment of the viability of this complaint, it is useful to note at the outset what the complaint does not allege. There is no claim that the defendants undertook any action outside of the normal course of proceedings in the Muszynski case itself. For example, there is no claim that the defendants used the pleadings or the process in the Muszynski case as leverage to coerce the plaintiff to pay a debt or surrender property unrelated to that litigation. Similarly, there is no claim that the defendants used unreasonable force, excessive attachments or extortionate methods to enforce the right of action asserted in the Muszynski

case. Finally, there is no claim that the defendants' purpose in pursuing the Muszynski case was to gain any collateral advantage extraneous to its merits. The only injury of which the plaintiff complains is that the defendants improperly continued to pursue the Muszynski case in order to enrich themselves and Muszynski at the plaintiff's expense.

An action for abuse of process lies against any person using "a legal process against another in an improper manner or to accomplish a purpose for which it was not designed." *Varga* v. *Pareles,* supra, 667; *Schaefer* v. *O. K. Tool Co.,* 110 Conn. 528, 532–33, 148 A. 330 (1930). Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of "a legal process . . . against another *primarily* to accomplish a purpose for which it is not designed . . . ." (Emphasis added.) Comment b to § 682 explains that the addition of "primarily" is meant to exclude liability "when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." See also 1 F. Harper, F. James & O. Gray, Torts (2d Ed. 1986) § 4.9; R. Mallen & V. Levit, Legal Malpractice (2d Ed. 1981) § 61; W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 121.

We have not previously considered the scope of the potential liability of an attorney for abuse of process arising out of the attorney's professional representation of the interests of his or her clients. Such a cause of action must be reconciled with our responsibility to assure unfettered access to our courts. Because litigants cannot have such access without being assured of the unrestricted and undivided loyalty of their own attorneys, we have afforded to attorneys, as officers

of the court, absolute immunity from liability for allegedly defamatory communications in the course of judicial proceedings. *Petyan* v. *Ellis,* 200 Conn. 243, 245–46, 510 A.2d 1337 (1986); see 2 F. Harper, F. James & O. Gray, supra, § 5.22, esp. pp. 191–92; 3 Restatement (Second), Torts § 586 (1977); R. Mallen & V. Levit, supra, § 65; W. Prosser & W. Keeton, supra, § 114. For other causes of action, however, the exigencies of the adversary system have not been deemed to require absolute immunity for attorneys. We have assumed, without discussion, that an attorney may be sued in an action for vexatious litigation, arguably because that cause of action has built-in restraints that minimize the risk of inappropriate litigation. *Vandersluis* v. *Weil,* supra, 361.[1] Other courts have held that immunity from libel actions should not carry over to provide an attorney with an absolute defense to liability for abuse of process. See, e.g., *Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc.,* 42 Cal. 3d 1157, 1169, 728 P.2d 1202, 232 Cal. Rptr. 567 (1986); *Hoppe* v. *Klapperich,* 224 Minn. 224, 243, 28 N.W.2d 780 (1947); *Peerman* v. *Sidicane,* 605 S.W.2d 242, 245 (Tenn. App. 1980). Accordingly, we conclude that an attorney may be sued for misconduct by those who have sustained a special injury because of an unauthorized use of legal process. In permitting such a cause of action, we must, however, take care "not to adopt rules which will have a chilling and inhibitory effect on would-be litigants of justiciable issues." *Morowitz* v. *Marvel,* 423 A.2d 196, 197–98 (D.C. App. 1980); *Brody* v. *Ruby,* 267 N.W.2d 902, 905 (Iowa 1978); *Spencer* v. *Burglass,* 337 So. 2d 596, 601 (La. App. 1976), writ of review denied, 340 So. 2d 990 (La. 1977).

State courts in other jurisdictions have undertaken the process of balancing these competing interests,

---

[1] One such restraint is the requirement that the action that is the subject of the vexatious litigation suit have terminated in the plaintiff's favor. See *Vandersluis* v. *Weil,* 176 Conn. 353, 356, 407 A.2d 982 (1978).

principally in cases arising out of medical malpractice litigation. The factual setting of these cases is a suit by a physician seeking vindication from an attorney after a malpractice claim brought on behalf of the physician's patient has ended in withdrawal, dismissal or settlement. Courts have struggled to determine under what circumstances such a complaint states a cause of action for abuse of process. The existing case law demonstrates that there is no bright line that clearly distinguishes between the ends ordinarily associated with litigation and the ulterior purpose that the tort of abuse of process is intended to sanction. Much turns on the specificity of the pleadings. In many of the cases, the complaints have alleged generally that a physician has incurred costs to defend against the underlying malpractice suit, or that the malpractice suit has injured his professional reputation, or that the malpractice suit was initiated in the hopes of procuring a favorable settlement. Ruling in favor of the attorney defendants, courts have held such complaints to be legally insufficient because they do not allege conduct showing the use of process to accomplish a purpose for which it was not designed. *Morowitz* v. *Marvel,* supra; *Brody* v. *Ruby,* supra, 905–906; *Friedman* v. *Dozorc,* 412 Mich. 1, 30–31, 312 N.W.2d 585 (1981); *Drago* v. *Buonagurio,* 61 App. Div. 2d 282, 285, 402 N.Y.S.2d 250, rev'd on other grounds, 46 N.Y.2d 778, 386 N.E.2d 821, 413 N.Y.S.2d 910 (1978); *Martin* v. *Trevino,* 578 S.W.2d 763, 769 (Tex. Civ. App. 1978). When, however, such allegations are buttressed by specific claims of egregious misconduct, such as utter failure to investigate the validity of the underlying action, or unwarranted pursuit of inappropriate motions, some courts have sustained liability for abuse of process. *Nienstedt* v. *Wetzel,* 133 Ariz. 348, 353–54, 651 P.2d 876 (1982); *Bull* v. *McCuskey,* 96 Nev. 706, 709, 615 P.2d 957 (1980); *Peerman* v. *Sidicane,* supra, 243–45; see S. Birnbaum,

"Physicians Counterattack: Liability of Lawyers for Instituting Unjustified Medical Malpractice Actions," 45 Fordham L. Rev. 1003, 1014–20, 1033–42 (1977); note, "Abuse of Process," 33 S.C.L. Rev. 331 (1981).

Accordingly, we conclude that although attorneys have a duty to their clients and to the judicial system not to pursue litigation that is utterly groundless, that duty does not give rise to a third party action for abuse of process unless the third party can point to specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation.[2] Any other rule would ineluctably interfere with the attorney's primary duty of robust representation of the interests of his or her client.

Our appraisal of the plaintiff's complaint in light of this holding leads us to conclude that the complaint does not state a cause of action for abuse of process. Its key allegation is that the defendants continued to pursue litigation "for an unlawful ulterior purpose, to wit: to inflict injury upon the plaintiff and to enrich themselves and their said client although they knew that their said lawsuit was without merit." So general an allegation of abuse does not satisfy the requirement of showing the use of legal process *"primarily* to accomplish a purpose for which it is not designed . . . ." (Emphasis added.) 3 Restatement (Second), supra, § 682. The complaint in no way distinguishes between the costs and benefits ordinarily associated with the pursuit of litigation and the burdens that the defendants in this case

---

[2] Our conclusion that the viability of an abuse of process claim turns on the specificity of its allegations accords with our holdings in other areas involving collateral attacks on the validity of proceedings. For example, we have held that to obtain an evidentiary inquiry into competence, for the purposes of challenging the voluntariness of a guilty plea, a defendant must make specific allegations that, if true, would constitute substantial evidence of mental impairment. See *State* v. *Watson,* 198 Conn. 598, 605, 504 A.2d 497 (1986).

allegedly improperly inflicted upon the plaintiff. We agree with the trial court that the plaintiff failed to state a cause of action for abuse of process.

## II

The plaintiff's alternate claim is that the trial court erred in its ruling that the fifth count of the plaintiff's complaint does not state a claim for legal malpractice. The fifth count relies on the provisions of the Code of Professional Responsibility[3] and asserts that the code defines legal obligations that an attorney owes, not only to his or her own client, but also to another party to the litigation. In instituting the Muszynski litigation against the plaintiff, the defendants allegedly undertook certain duties to the plaintiff: (1) to treat the plaintiff with consideration;[4] (2) to refrain from the knowing pursuit of this litigation "merely to harass or to maliciously injure [the plaintiff]";[5] and (3) to refrain from the knowing pursuit of this litigation when it was "unwarranted under existing law."[6] The complaint fur-

---

[3] The Code of Professional Responsibility was redesignated the Rules of Professional Conduct in 1986. For purposes of the plaintiff's claim, the relevant rules are identical.

[4] At the time of the underlying action, the Code of Professional Responsibility EC 7-10 provided: "The duty of a lawyer to represent his client with zeal does not militate against his concurrent obligation to treat with consideration all persons involved in the legal process and to avoid the infliction of needless harm."

[5] At the time of the underlying action, the Code of Professional Responsibility DR 7-102 (A) (1) provided: "REPRESENTING A CLIENT WITHIN THE BOUNDS OF THE LAW.

"(A) In his representation of a client, a lawyer shall not: (1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another."

[6] At the time of the underlying action, the Code of Professional Responsibility DR 7-102 (A) (2) provided: "In his representation of a client, a lawyer shall not . . . (2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law."

ther alleges that, in endeavoring to carry out these duties to the plaintiff, the defendants "failed to exercise the degree of skill or care ordinarily exercised by attorneys in their profession in this state and elsewhere." The complaint finally alleges that the plaintiff has suffered damages proximately resulting from the defendants' alleged negligence and malpractice.

The trial court held that this pleading was legally insufficient for two reasons. It concluded, broadly, that violations of the Code of Professional Responsibility do not give rise to any private cause of action for legal malpractice by anyone, including an attorney's client. More narrowly, it concluded that even if a client could bring such an action to enforce code obligations, this plaintiff could not bring such a suit because he had not alleged circumstances that would make him the foreseeable beneficiary of the legal services rendered by the defendants to Muszynski. We agree with the trial court's narrower disposition of the plaintiff's complaint and hence do not reach the broader one.

The plaintiff maintains that the Code of Professional Responsibility confers upon him the status of a foreseeable beneficiary of the obligations that the code imposes upon the defendants by operation of law. The trial court's ruling to the contrary, according to the plaintiff, improperly relies on the absence of privity of contract as a defense to malpractice actions. Since courts generally now permit actions for professional malpractice without reference to privity, so long as the plaintiff is the intended or foreseeable beneficiary of the professional's undertaking; see, e.g., *Tarasoff* v. *Regents of the University of California,* 17 Cal. 3d 425, 435–42, 551 P.2d 334, 131 Cal. Rptr. 14 (1976); *Rosenblum* v. *Adler,* 93 N.J. 324, 352–53, 461 A.2d 138 (1983); the plaintiff contends he should be allowed to proceed to trial on his complaint.

The plaintiff misreads the ruling of the trial court and the prevailing case law. The trial court did not exclude the possibility that, under some circumstances, a third party might be able to recover for the legal malpractice of an attorney. For example, the named beneficiary of a will invalidated because of an attorney's faulty draftsmanship has been held to have a cause of action. *Lucas* v. *Hamm,* 56 Cal. 2d 583, 588–91, 364 P.2d 685, 15 Cal. Rptr. 821 (1961), cert. denied, 368 U.S. 987, 82 S. Ct. 603, 7 L. Ed. 2d 525 (1962). Counsel for a receiver has been held liable to a creditor for advice that resulted in misallocation of receivership assets. *Prescott* v. *Coppage,* 266 Md. 562, 574, 296 A.2d 150 (1972); see generally R. Mallen & V. Levit, supra, § 79, pp. 152–54. The plaintiff in this case, however, has not alleged the existence of a relationship with Muszynski by virtue of which he would be the foreseeable beneficiary of the legal services rendered by the defendant to Muszynski.

We are left therefore with the question of whether, in the absence of a specific relationship that would make it reasonable for the defendants to foresee the plaintiff's reliance on their conduct, the plaintiff as a third party may recover damages for malpractice from the defendants. Every court that has examined this question has concluded that the Code of Professional Responsibility does not, per se, give rise to a third party cause of action for damages. See, e.g., *Bickel* v. *Mackie,* 447 F. Sup. 1376, 1383 (N.D. Iowa), aff'd, 590 F.2d 341 (8th Cir. 1978); *Noble* v. *Sears, Roebuck & Co.,* 33 Cal. App. 3d 654, 658–59, 109 Cal. Rptr. 269 (1973); *Myers* v. *Cohen,* 687 P.2d 6, 16 (Hawaii App. 1984), rev'd on other grounds, 67 Hawaii 389, 688 P.2d 1145 (1984); *Brody* v. *Ruby,* supra, 907–908; *Young* v. *Hecht,* 3 Kan. App. 2d 510, 515, 597 P.2d 682 (1979); *Hill* v. *Willmott,* 561 S.W.2d 331, 333–35 (Ky. App. 1978); *Spencer* v. *Burglass,* supra, 600–601; *Sullivan* v. *Birmingham,* 11 Mass. App. 359, 368–69, 416 N.E.2d 528 (1981); *Fried-*

*man* v. *Dozorc,* supra, 24; *Drago* v. *Buonagurio,* supra, 778–79; *Martin* v. *Trevino,* supra, 770; see also R. Mallen & V. Levit, supra, § 67; contra C. Wolfram, "The Code of Professional Responsibility as a Measure of Attorney Liability in Civil Litigation," 30 S.C.L. Rev. 281, 310–14 (1979).[7] In arriving at this unanimous conclusion, the courts have noted the absence of any express indication, in the text or history of the code, of an intent to establish rules that would be actionable as malpractice.[8] The courts have declined to infer such an intent because of concern for the chilling effect of third party intrusion into an attorney's primary duty of loyalty to the best interests of his or her client. As did the trial court, we find this reasoning fully persuasive. Accordingly, we hold that the plaintiff's complaint did not state a cause of action for legal malpractice.

There is no error.

In this opinion the other justices concurred.

---

[7] We recognize that the rules of practice and the codes adopted by the judges of the Superior Court have the force of law. See *State* v. *Cook,* 183 Conn. 520, 521–22, 441 A.2d 41 (1981). Courts in other jurisdictions have refused to interpret statutes that govern attorney conduct so as to give rise to actions of malpractice. See, e.g., *Bob Godfrey Pontiac, Inc.* v. *Roloff,* 291 Or. 318, 337, 630 P.2d 840 (1981). Despite its legally binding status in this state, we conclude that the Code of Professional Responsibility does not of itself give rise to a third party cause of action.

[8] In 1986, the Code of Professional Responsibility was amended in this state to include a preamble that clarifies this issue. The new preamble now states: "Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty." Practice Book, Rules of Professional Conduct, Preamble (1986).