CHRISTOPHER C. NOBLE *v.* BEVERLY MILLER
MARSHALL
(8705)

O'CONNELL, FOTI and CRETELLA, Js.

Argued June 12—decision released September 11, 1990

*Steven H. Meyer,* with whom was *Joseph B. Burns,* for the appellant (defendant).

*David S. Gordon,* for the appellee (plaintiff).

FOTI, J. The defendant appeals from the judgment rendered following the court's granting of the plaintiff's motion to strike her counterclaim. The sole issue presented in this appeal is whether the facts as alleged, including a claimed violation of the Rules of Professional Conduct, give rise to a claim of violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. We affirm the judgment of the trial court.

The plaintiff brought the present action against the defendant for the nonpayment of attorney's fees in connection with legal services rendered. The defendant filed a counterclaim alleging under CUTPA that the plaintiff was negligent in his legal representation of her interests, that his legal fee was unreasonable, and that, consequently, he had breached Rule 1.5 (a) of the Rules of Professional Conduct.[1] The plaintiff moved to strike the counterclaim. The trial court granted the plaintiff's motion, finding that the defendant's counterclaim failed to state a claim upon which relief could be granted, in that it did not give rise to an action under CUTPA.

"A motion to strike challenges the legal sufficiency of a pleading." *Burns* v. *Gleason Plant Security, Inc.,*

---

[1] Rule 1.5 (a) of the Rules of Professional Conduct states: "A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) The fee customarily charged in the locality for similar legal services;

"(4) The amount involved and the results obtained;

"(5) The time limitations imposed by the client or by the circumstances;

"(6) The nature and length of the professional relationship with the client;

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) Whether the fee is fixed or contingent."

10 Conn. App. 480, 482, 523 A.2d 940 (1987). When reviewing the trial court's granting of a motion to strike a counterclaim, we must construe the facts alleged in the counterclaim in a light most favorable to the pleader. Id. "This includes the facts necessarily implied and fairly provable under the allegations. . . . It does not include, however, the legal conclusions or opinions stated in the [counterclaim]." (Citations omitted.) Id.

General Statutes § 42-110b (a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." The act further provides for a private cause of action for actual and punitive damages. General Statutes § 42-110g.

In determining whether a case falls within the scope of CUTPA's general description of unfair or deceptive practices, our courts have adopted the "cigarette rule" set forth in *FTC* v. *Sperry & Hutchinson Co.*, 405 U.S. 233, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972). *McLaughlin Ford, Inc.* v. *Ford Motor Co.*, 192 Conn. 558, 567–68, 473 A.2d 1185 (1984); *Siudyla* v. *ChemExec Relocation Systems, Inc.*, 23 Conn. App. 180, 186–87, 579 A.2d 578 (1990). Under that standard, three factors will be looked at to determine if an action or practice is unfair: " ' " '(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law statutue, or other established concept of fairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers . . . .' " *FTC* v. *Sperry & Hutchinson Co.*, supra, 244 n.5.' *Mead* v. *Burns,* 199 Conn. 651, 664–65, 509 A.2d 11 (1986)." *Dow & Condon, Inc.* v. *Anderson,* 203 Conn. 475, 483, 525 A.2d 935 (1987).

It is clear that the provision of at least some legal services constitutes "the conduct of any trade or commerce," and that CUTPA applies to the conduct of attorneys. *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 520–21, 461 A.2d 938 (1983). Thus, the question of whether that service is provided unfairly requires the application of the "cigarette rule" enumerated above.

It is the defendant's position that, although it is necessary to satisfy only one of the three criteria of the "cigarette rule," an unreasonable attorney's fee meets all three criteria, in particular, the "public policy" and "substantial injury" tests. The crux of the defendant's argument is her reliance upon the plaintiff's alleged violation of Rule 1.5 (a) of the Rules of Professional Conduct to support her claimed violation of CUTPA. Unless she can establish that Rule 1.5 (a) gives rise to a CUTPA action, her counterclaim must fail.

In *Mozzochi* v. *Beck,* 204 Conn. 490, 529 A.2d 171 (1987), our Supreme Court was faced with a similar question of whether a violation of the Code of Professional Responsibility[2] can be used as the sole basis for a cause of action. In that case, the plaintiff attempted to rely on DR 7-102 of the code to support his claim that the defendants wrongfully pursued an action against him in a separate case. Although the court in *Mozzochi* explored the option of concluding that the code cannot give rise to a private cause of action, it chose to carve a narrower rule of law and concluded that the plaintiff in that case could not bring the action because he was not the defendants' client in the earlier action, and therefore was an unforeseeable third party beneficiary of the legal services rendered by those defendants.

---

[2] The "Code of Professional Responsibility" was redesignated "Rules of Professional Conduct" in 1986.

The defendant in the present case asks us to distinguish *Mozzochi*. She asserts that that case cannot apply here because she was a direct client of the plaintiff and the narrow holding of *Mozzochi* applies only to nonclient third party beneficiaries of the attorney-client relationship. The plaintiff, on the other hand, asks that we broaden the holding of *Mozzochi*.

While we recognize the narrow structure of the holding in *Mozzochi*, we conclude that the Rules of Professional Conduct do not of themselves give rise to a cause of action, even to an attorney's client.[3] The rules that have been adopted by the judges of the Superior Court have the force of law; *Mozzochi* v. *Beck,* supra, 501 n.7; but they were not intended to create a private cause of action under CUTPA.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] In addition to the name redesignation, a preamble was included that states in part: "Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty." Practice Book, Rules of Professional Conduct (1986) Preamble.