[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By revised two-count complaint filed March 29, 1990, plaintiff New England Redemption ("New England") brings suit against Silver Realty Partnership ("Silver") d/b/a Bristol Pepsi. New England is in the business of redeeming deposit bottles pursuant to the so-called "Bottle Bill". It is alleged that Silver is a distributor pursuant to Connecticut General Statutes Section 22a-245 et seq. (rev'd to 1989). Count one alleges further that Sections 22a-244 and 22a-245 require the defendant to pay handling and redemption fees on redeemed bottles, that plaintiff has redeemed bottles the value of which exceed $51,000.00 and that defendant has neglected or refused to pay the sums due.
Count two realleges count one in its entirety and claims that Silver's failure to pay the sums due as required by state law in a regulated trade or business such as that of the defendant in a course of conduct injurious to the public good and constitute unfair and deceptive trade practices in the conduct of their trade in violation of Connecticut General Statutes Section 42-110b
(rev'd to 1989).
On April 19, 1990, defendant filed an answer, three special CT Page 7444 defenses and a four-count counterclaim. The first counterclaim alleges that New England failed to properly investigate facts before commencing suit and before placing an attachment on the land records. Furthermore, the defendant has not engaged in business as alleged and that the actions of the plaintiff constitute an abuse of process. Count two alleges slander of title due to the attachment being improperly filed. The third counterclaim alleges that the procedure used by New England to place an attachment on the land records failed to provide for a meaningful and timely process hearing and results in unconstitutional deprivation in violation of theFourteenth Amendment to the U.S. Constitution. The fourth and final counterclaim alleges a CUTPA violation on behalf of the plaintiff with defendant citing as unfair methods of competition and unfair or deceptive acts or practices the allegations found in the first three counts of defendant's counterclaim.
On May 1, 1990, New England filed a motion to strike all four counts of defendant's counterclaim, along with a memorandum in support of its motion to strike. Defendant has filed a memorandum in opposition to the motion to strike.
The function of a motion to strike is to test the legal sufficiency of a pleading. Ferryman v. Groton, 212 Conn. 138, 142
(1989). "It is elementary that such a motion must rely wholly upon the factual allegations of the pleading addressed and may not contain affirmative factual assertions which could only be proved by evidence." State v. Bashura, 37 Conn. Sup. 745, 748 (App. Sess. 1981). [I]n ruling on a motion to strike, the court must construe the facts alleged in the complaint in a manner most favorable to the plaintiff." Rowe v. Godon, 209 Conn. 273, 278
(1988), and is limited to considering the grounds specified in the motion." Meredith v. Police Commission, 182 Conn. 138, 140
(1980).
COUNT ONE OF DEFENDANT'S COUNTERCLAIM — ABUSE OF PROCESS
"An action for abuse of process lies against any person using `a legal process against another in an improper manner to accomplish a purpose for which it was not designed. Mozzochi v. Beck, 204 Conn. 490, 494 (1987) (quoting Varga v. Parles,137 Conn. 663, 667 (1951)). In order to state a claim for abuse of process, the complaint must allege that the defendants had engaged in overt acts for a collateral purpose unrelated to the lawsuit they were prosecuting. Mozzochi, 204 Conn. at 442. "[T]he viability of an abuse of process claim turns on the specificity of its allegations . . . ." Id. at 497, n. 2.
The essence of Silver's first counterclaim is that New England commenced suit and attached land owned by the defendant CT Page 7445 without properly investigating facts, that the defendant has not engaged in business as alleged and that the actions of the plaintiff constitute an abuse of process. It is submitted that defendant fails to allege, as required by Mozzochi, that the defendants engaged in overt acts for a collateral purpose unrelated to the lawsuit they were prosecuting (emphasis added). Therefore defendant's first counterclaim alleging abuse of process is legally insufficient and is stricken.
COUNT TWO OF DEFENDANT'S COUNTERCLAIM — SLANDER OF TITLE
"Slander of title is a tort whereby the title of land or other property is disparaged by a letter, caveat, mortgage, lien or some other written instrument." Wright, Connecticut Law of Torts, Section 167 (2nd Ed., 1968). "The definition of the word `slander' requires that there be an `utterance of false charges or misrepresentations which defame and damage reputation.'. Webster, Third New International Dictionary." Battistelli v. Corso,30 Conn. Sup. 135, 143 (Super.Ct. 1973).
In Section 167, Connecticut Law of Torts, Wright offers that "[t]here appears to be very little authority in Connecticut discussing the tort of slander of title. However, II Causes of Action, Cause of Action for Slander of Title to Real Property, 649 (1986) states:
 To maintain an action for slander of title to real property, the plaintiff must allege and prove the following elements: (1) possession of a legally protectable interest in the property which is the subject of the slander; (2) a statement by the defendant, oral or written, which disparaged the plaintiff's title to, or interest in, the property; (3) "publication" of the statement to some third party; (4) the falsity of the statement; (5) the statement was made with "malice"; and (6) special damages were suffered as a proximate result of the statement.
Id. at 655; See 50 Am.Jur.2d, Libel and Slander, Section 555 (1970).
SECOND COUNT
Silver's second counterclaim alleges that New England commenced suit and attached land owned by the defendant without properly investigating facts, that the attachment has been improperly filed, and that the defendant's title to the land has been disparaged by this lien on the land records, and, as a result, CT Page 7446 the defendant has suffered loss and damages.
New England challenges the legal sufficiency of the second count of Silver's counterclaim by arguing plaintiff's non-compliance with Connecticut General Statutes Section 47-33j
(rev'd to 1989), which prohibits the use of recording notices under Sections 47-33f and 47-33g for the purpose of slandering the title to land. Although defendant's second counterclaim does not appear to attempt a statutory action under Section 47-33 but rather a common law tort for slander of title, the allegations contained therein are insufficient to support an action.
COUNT THREE OF DEFENDANT'S COUNTERCLAIM — UNCONSTITUTIONAL DEPRIVATION
Silver alleges that "the procedure utilized by the plaintiff [ex-parte prejudgment] to place an attachment on the land records failed to provide for a meaningful and timely due process hearing and results in unconstitutional deprivation, in violation of theFourteenth Amendment to the U.S. Constitution. . ." (Answer. . .p. 4).
Preliminarily, our Supreme Court has determined that Connecticut General Statutes Section 52-278e, Allowance of prejudgment remedy without hearing. . ., meets the due process standards of the state and federal constitutions. Fermont Division Dynamics Corp. of America, Inc. v. Smith, 178 Conn. 393,397 (1979). "The opinions of the Supreme Court of Connecticut are binding upon the Superior Court and. . .until the court's decisions are changed, the Superior Court is bound to follow them. Soden v. Johnson, CV89-01053345 (March 26, 1990, Cioffi, J.), (citing Monte v. Hartford Hospital, 26 Conn. Sup. 441, 442-43 (Super.Ct. 1966).
While not so stating, defendant's third counterclaim apparently rests on the recent Second Circuit Court of Appeals opinion announced in Pinsky v. Duncan, No. 89-7521 (and Cir. Mar. 9, 1990). In Pinsky, the Second Circuit found that Connecticut's ex-parte prejudgment real estate attachment statute was unconstitutional on its face in that it deprived a defendant of his right to a hearing prior to the issuance of the attachment in violation of the due process clause of the 14th Amendment to the United States Constitution, pp 11-12. Soden, p. 2.
The decision in Pinsky does not apply to the case at bar. Here, the order granting plaintiff's application for ex-parte prejudgment attachment of the subject real estate was entered February 1, 1990 (Kulawiz, J.). Pinsky was decided on March 9, 1990. On petitions for rehearing filed March 22, 1990 and March 23, 1990 and decided April 25, 1990, the Second Circuit denied the CT Page 7447 petitions except only insofar as we amend our prior opinion to hold that. . .our declaration of the unconstitutionality of Connecticut General Statutes Section 52-2783 (a)(1) shall have prospective effect only, i.e., shall be applicable only to attachments filed after March 9, 1990." (Emphasis added)
For the foregoing reasons, plaintiff's motion to strike defendant's third counterclaim sounding in unconstitutional deprivation is granted.
COUNT FOUR OF DEFENDANT'S COUNTERCLAIM — CUTPA
In its fourth counterclaim, defendant alleges that the totality of New England's conduct as alleged in the first three counts of the counterclaim constitutes a violation of CUTPA, Connecticut General Statutes Section 42-110a et seq. New England moves to strike arguing that "[s]ince none of the first three counts set forth a cause of action, there would be no basis for the fourth count" and "[s]ince all the prior counts should be stricken, the CUTPA [claim] has not independent allegations upon which relief may be granted."
This argument is persuasive, Therefore, count four is also stricken.
KULAWIZ, J.