[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
ARTICULATION REQUESTED BY DEFENDANT RE: MOTION TO STRIKE
The plaintiff's revised complaint makes the following allegations in count two as to D'Amico.
 18. Defendant entered answer and included three special defenses.
 19. Defendant knew or should have known that no such defenses existed in a summary process action. CT Page 7837
 20. Defendant knew or should have known that Connecticut law has barred jury trials in summary process matters since 1818.
 21. Defendant even wrote the clerk's office and stated that he knew such jury claim was improper.
In total, the second count has 25 allegations. The third count contains these same allegations and adds two paragraphs which allege that the defendant D'Amico violated CUTPA and that the plaintiff has been injured as a direct result thereof.
I. Abuse of Process-Second Count.
In Mozzochi v. Beck, 204 Conn. 490, 492 (1987) the trial court "held that the complaint did not state a claim for abuse of process because it failed to allege that the defendants had engaged in overt acts for a collateral purpose unrelated to the lawsuit that they were prosecuting". Citing Vargas v. Pareles,137 Conn. 663, 667 (1951).
In Vargas v. Pareles, 137 Conn. 663, 666 (1951 the court instructed the jury that an "abuse of process is the misuse of process regularly issued to accomplish an unlawful ulterior purpose." The court stated that "while an ulterior motive often is present, it is not an essential element of the action. One who uses a legal process against another in an improper manner or to accomplish a purpose for which it was not designed is liable to the other for the injury caused thereby." Id. at 667. (e.g. improper manner refers to unreasonable force in the service of process; subterfuge or extortion in action of summary process. McGann v. Allen 105 Conn. 177, 188 (1926).
In determining whether a cause of action for abuse of process may be brought to recover damages from attorneys who allegedly pursue litigation despite discovery that their client's claim lacked merit depends upon the specific allegations contained in the complaint. Mozzochi204 Conn. at 496.
In Mozzochi the court looked at what the complaint did not allege. 204 Conn. at 493-494. "Courts have struggled to determine under what circumstances such a complaint states a cause of action for abuse of process. Much turns on the specificity of the pleadings. "Id. at 496. Complaints alleging abuse of process are legally insufficient when the allegations are regarding the cost of defending the suit. Id. CT Page 7838
"When, however, such allegations are buttressed by specific claims of egregious misconduct, such as utter failure to investigate the validity of the underlying action, or unwarranted pursuit of inappropriate motions, some courts have sustained liability for abuse of process." Id. (Emphasis added), (Citations omitted). However, these courts are outside of our jurisdiction. A review of these cases supporting the above proposition reveals the following:
 (1). Nienstedt v. Wetzel, 651 P.2d 876, 882 (1982) (the court held that there was evidence" from which a trier of fact could have concluded that the ulterior or collateral purpose of appellant Manfred Wetzel to subject the Nienstedts to excessive litigation expenses was in fact his primary purpose, and that the use of various legal processes was not justified or used for legitimate or reasonably justifiable purpose of advancing appellants' interests in ongoing litigation"; "it is the subsequent misuse which constitutes the misconduct for which liability is imposed.
 On the other hand, the authorities recognize that there is no liability when the defendant has done nothing more than legitimately utilize the process for its authorized purpose, even though with bad intentions." Id. at 881.
 (2) Bull v. McCuskey, 615 P.2d 957, 960 (1980) (attorney knew there was no basis for claim but filed suit anyway for the ulterior purpose of coercing nuisance settlement).
In the instant case, the plaintiff alleged that the defendant knew that some of his proffered defenses did not exist in a summary process action and that the defendant wrote the clerk's office and stated he knew the jury claim was improper. (Revised Complaint, Second Count, paragraphs 18-21). Furthermore, the plaintiff alleged that the "defendant did such acts with the intention of harming the plaintiff, interfering with her property and contractual rights and causing her to CT Page 7839 expend great sums of money in attorney fees." (Revised Complaint, Second Count para. 22) From these allegations, the plaintiff has pled facts which if proven state a sufficient cause of action for abuse of process. It is possible that the only reason the defendant filed a jury claim, even though he allegedly knew it was improper, was solely for the purpose of extending litigation (e.g. delaying the eviction) and to punish the plaintiff for pursuing her lawsuit.
The Motion to Strike Count Two is denied.
II. CUTPA — Third Count
In Ivey, Barnum and O'Mara v. Indian Harbor Properties, Inc.190 Conn. 528 (1983) the court defines what constitutes unfair trade practice. The court in Ivey held that the challenged activity must be contrary to a specific and substantial public interest. Id. at 533. "The private action authorized by CUTPA. . . is intended to provide additional sanctions to deter unfair trade practice's that injure the general consuming public, rather than to provide additional remedies for the redress of entirely private wrongs". Id. at 540. In Ivey the court determined that there was nothing in the factual allegations that demonstrated that the dispute was more than a private dispute. Id.
Yet, the "public" interest requirement for a private action under CUTPA was eliminated by an amendment to General Statutes42-110g (a) that became effective on June 8, 1984," Ficher v. Mine Hill Corp., 207 Conn. 204, 207 n. 2 (1988). Thus, to determine whether a case falls within the scope of CUTPA, one must now apply the "cigarette rule" which looks at the following three factors:
 (1). Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise. . .; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. . . ." Noble v. Marshall, 23 Conn. App. 227, 229 (Citation omitted)
In the instant case, CUTPA does not apply to the conduct of this attorney because the defendant did not engage in any trade or commerce with the plaintiff and the defendant was not the plaintiff's attorney. (CUTPA applied to attorney conduct when CT Page 7840 plaintiff alleged fraud and deceit by her attorney; See Mercier v. Cohen 4 CSCR 142 (1989). Connecticut General Statutes42-110a (4) defines trade and commerce as the "advertising. . . . or the distribution of any services. . .in this state. "CGS42-110a (4) (rev'd to January 1, 1991). Pursuant to CGS42-110g (a) any "person who suffers any ascertainable loss of money or property. . . as a result of the use or employment of a method, act or practice prohibited by section 42-110b may bring an action. . . ." CGS 42-110g (a) (rev'd to January 1, 1991.)
Accordingly CUTPA does not apply and the Motion to Strike count three is granted.
Ballen, Judge.