[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action the plaintiff has alleged in the first count of the complaint that the defendant vacated commercial premises in May, 1994, and was obligated to pay rent through December, 1996. Although the issue has not been raised in materials currently before the court, the complaint does not allege that rent has not been paid. In the second count, the plaintiff seems to allege that the defendant left behind materials when it vacated, and the plaintiff incurred some expense in disposing of the materials. At issue is a motion to strike the counterclaim CT Page 6157 filed by the defendants on December 24, 1995.[1]
The counterclaim is in three counts. The first count sounds in abuse of process, the second in a CUTPA violation, and the third alleges unjust enrichment. The motion to strike asserts that none of the counts states a ground on which relief may be granted.
"The purpose of a motion to strike is `to contest the legal sufficiency of the allegations of any complaint . . . to state a claim on which relief can be granted.' In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." Novametrix Medical Systems,Inc. v. BOC Group, Inc., 224 Conn. 210, 214-15 (1992). "This includes the facts necessarily implied and fairly provable under the allegations. . . . It does not include, however, the legal conclusions or opinions stated in the complaint. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." Westport Bank Trust Co. v.Corcoran, Mallin Aresco, 221 Conn. 490, 495 (1992) (citations omitted). So long as the allegations can constitute a cause of action, it doesn't matter whether the pleader will be able to prove his case at trial. Levine v. Bess and Paul Sigal HebrewAcademy of Greater Hartford, Inc., 39 Conn. Sup. 129, 130-31
(1983).
 I
With these principles in mind, we turn to the motion to strike the first count of the counterclaim, which is a claim that the plaintiffs committed an abuse of process in the course of the instant action. Abuse of process may be most easily defined by comparing it to its kinfolk malicious prosecution and vexatious suit. In the latter two actions, the plaintiff must allege and prove that the original action, whether criminal or civil, wasinstituted with malice, without probable cause, and that it terminated in favor of the plaintiff. See, e.g., Schaefer v. O.K.Tool Co., Inc., 110 Conn. 528, 532 (1930). Abuse of process is the "misuse of process regularly issued to accomplish an unlawful ulterior purpose. The gravamen of the complaint is the use of process for a purpose not justified by law." Schaefer, supra. An abuse of process need not require that the action being complained of have terminated, nor that it was instituted without probable cause; the original action must have been used, however, CT Page 6158 to accomplish some object other than the successful completion of the lawsuit. In McGann v. Allen, 105 Conn. 177, 188-91 (1926), for example, the use of process regularly issued to compel the plaintiff to go to the complainant's store for a confrontation, which was not authorized by law, was an abuse of process.
Our Supreme Court more recently addressed the issue inMozzochi v. Beck, 204 Conn. 490 (1987):
An action for abuse of process lies against any person using "a legal process against another in an improper manner or to accomplish a purpose for which it was not designed." Varga v.Pareles. . . . Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of "a legal process . . . against another primarily to accomplish a purpose for which it is not designed. . . ." Comment b to § 682 explains that the addition of "primarily" is meant to exclude liability "when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." Mozzochi, supra, 494.
Mozzochi held, in the context of that case, that an abuse of process was not sufficiently pleaded where there was no allegation of injury "outside of the normal contemplation of private litigation. Id., 497. The complaint in Mozzochi alleged that the underlying action was brought for "an unlawful ulterior purpose, to wit: to inflict injury upon the plaintiff and to enrich themselves and their said client although they knew that their said lawsuit was without merit." This allegation was held not to state an ulterior purpose for the purpose of abuse of process. Id. The arguably illicit purpose of trying to prevail in a frivolous lawsuit, though perhaps ultimately actionable in a different cause of action, is not sufficiently ulterior to constitute an abuse of process.
The counterclaim in the instant action alleges that after the defendant vacated the premises, it continued to pay rent and common area maintenance charges; that the plaintiff's complaint alleged that it was seeking "back rent"; that the plaintiff delayed responding to discovery requests, the responses to which ultimately indicated that a new tenant had moved in shortly after the vacation of the premises by the defendant and that the new CT Page 6159 tenant had in fact been paying substantially greater rent than the defendant was contractually obligated to pay; and that the plaintiff was not only receiving double rent but also demanding back rent from the defendant by virtue of this lawsuit. The defendant alleged that it had incurred substantial costs as a result, and that the plaintiff's lawsuit was either malicious or committed with a gross disregard of the facts, or both. Although these allegations, if true, depict a somewhat disturbing scenario, they do not include a purpose ulterior to the bringing of the lawsuit. Pursuant to Mozzochi and Schaefer, then, the motion to strike the first count of the counterclaim must be granted.[2]
 II
The second count of the counterclaim alleges a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), §§ 42-110a
et seq. of the General Statutes. The plaintiff has sought to strike the second count, on the ground that, in the circumstances presented, a CUTPA claim may be brought only if the underlying lawsuit is a "sham". See, e.g, Gamlestaden PLC v. Backstrom, 1995 WL 326047 (J.D. Stamford, May 16, 1995, Karazin, J.). The defendant agrees, as a general proposition, that a CUTPA claim cannot be based on a single lawsuit, unless it is a sham. As the parties have framed the issue, then, the dispositive question is whether the complaint, in light of the allegations of the counterclaim which are deemed to be true for the purpose of deciding the motion to strike, is a sham. A sham lawsuit was defined in Connecticut National Bank v. Mase,3 Conn. L. Rptr. 285, 286 (January 31, 1991, Flynn, J.), as one instituted in bad faith, on grounds so flimsy that no reasonably prudent person could hold a bona fide belief in the existence of facts necessary to prove the case.
The second count of the counterclaim realleges the facts recited in the first count, and adds the allegation that CUTPA was violated because the actions were immoral, oppressive, unscrupulous and injurious. The allegations of the count, along with necessary inferences, could support the conclusion, at a minimum, that the plaintiff persisted with the lawsuit after it knew the suit was groundless, and that no person looking at the facts could come to any other conclusion. Although I have no idea whether facts will sustain the allegation, and there may well be a reasonable explanation even if the factual allegations of the counterclaim are true, the defendant has alleged facts sufficient CT Page 6160 to allow it to present its case.
 III
Finally, the plaintiff has moved to strike the third count of the counterclaim, which sounds in unjust enrichment. The plaintiff asserts that the elements of unjust enrichment are that the a benefit has been conferred on the defendant by the plaintiff; that the defendant knows or appreciates the benefit, and that the defendant has accepted the benefit under circumstances which make it inequitable for the defendant to retain the benefit without compensation; see, e.g., CBS SurgicalGroup, Inc. v. Holt, 37 Conn. Sup. 555, 558 (Appellate Session, 1981); and that the defendant has not alleged in its counterclaim that the plaintiff knew or appreciated the benefit of the double rent receipts and CAM charges.
The third count of the counterclaim realleges the allegations of the first count and adds allegations to the effect that the plaintiff benefitted [benefited] from the receipt of double rent and that the benefit was unjust. Although the knowledge or appreciation of the benefit is not alleged in those words, it certainly is a fair inference from the allegations of the first count, whereby the plaintiff allegedly signed a lease with the second lessee and accepted rent, while at the same time proceeding with this action, that the plaintiff knew of the benefit.[3]
As stated in the introduction, both the express allegations of the complaint and necessary inferences from the complaint are to be deemed true when ruling on a motion to strike.
 IV
For reasons stated above, the motion to strike is granted as to the first count of the counterclaim. As to the second and third counts, the motion to strike is denied.
Beach, J.