[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff, Early, Ludwick Sweeney, LLC ("ELS"), a law firm specializing, inter alia, in pediatric lead paint poisoning cases, brings suit against John-Henry ("Steele"), an attorney formerly employed by ELS, and the law firm of Brown, Welsh, 
CT Page 8976 Votre, P.C. ("BWV"), Steele's current employer. Plaintiffs complaint is in four counts. The First Count alleges misappropriation of trade secrets in violation of Connecticut's Uniform Trade Secrets Act, ("UTSA") General Statutes, Sections 35-50ff; the Count, wilful violation of said trade secrets act; the Third Count alleges that said misappropriation is a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes, Sections 42-110a ff. The Fourth Count alleges tortious interference with business expectancies, in that defendants solicited clients of the plaintiff following defendant Steele's departure from ELS.
The parties appeared in court on March 2, 1998 to be heard on plaintiff's application for temporary injunction. At the time the plaintiff proposed to go forward on its application both for temporary and permanent injunctions; counsel for defendants proposed going forward as a trial on the merits, the court agreed with defendant's proposal and the hearing on the merits opened on that date, continued on March 4, 1998 parties rested on March 31, 1998.
 II
From December, 1991 defendant Steele worked as an attorney for ELS and its predecessor firm. ELS, its predecessor and its principal, James F. Early, have concentrated on representing clients in toxic tort cases, including asbestos disease and lead paint poisoning cases. The firm's specialty in pediatric lead poisoning cases had its genesis in the beginning of this decade and the firm has acquired experience, expertise and, a client base in this area of the law. ELS has over 100 such cases pending. Defendant Steele began working for the firm circa 1991 and his practice was predominantly in the area of pediatric lead poisoning cases. In December, 1997, Steele left the employ of ELS and joined BMV. At the time of his departure, Steele was in charge of the firm's lead poisoning cases under the super-vision of Early.
By letters dated January 2, 1998, Steele notified sixteen clients of ELS that he had moved from ELS to BMV and in most of said letters indicated his willingness to continue handling that client's lead poisoning case. (The letters were, for the most part, at the parents or guardians of child victims of lead paint poisoning). The plaintiff asserts that the names, addresses and telephone numbers, guardians, blood levels, and insurance CT Page 8977 coverage of said clients constitute a trade secret, namely a client list, misappropriated by defendants. This court is not persuaded.
 III
"Trade secret" is defined by statute (General Statutes, Section 35-51(d)) information, including a formula, pattern, compilation, program, device, method technique, process, drawing, cost data or customer list that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure and use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."
"Misappropriation" means: "(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of another without express or implied consent by a person who (A) used improper means to acquire knowledge of the trade secret; or (B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was (i) derived from or through a person who had utilized improper means to acquire it; (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use. . .; or (iii) derived from or through a person who owed a duty to the person seeking relief to maintain its security or limit its use; or (C) before a material change of his position, knew, or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake." General Statutes, Section 35-51(b).
"Improper" means "includes theft, bribery, misrepresentation, breach or inducement. of a breach of duty to maintain secrecy, or espionage through electronic or other means" (§ 35-51(a)).
Thus, in the context of the facts of this case, plaintiff claims that defendant Steele used a trade secret of the plaintiff without plaintiffs express or implied consent when at the time of use Steele knew that this knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; while defendant BMV knew that its knowledge of the trade secret was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy CT Page 8978 or limit its use.
 IV
A list of customers may be a trade secret, Town Country House Homes Service, Inc. v. Evans,150 Conn. 314, 318. Nevertheless, a substantial element of secrecy must exist, to the extent that there would be difficulty in acquiring the information except by the use of improper means, Id. at 319. Factors to be considered in determining if information is a trade secret include (1) the extent the information is known outside the business; (2) the extent to which it is known by employees or others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others, Id. (citation omitted), Robert S. Weiss Associates. Inc. v. Wiederlight, 208 Conn. 525,538. Applying these factors to the facts of this case, that element of secrecy simply has not been shown here. Twelve of the sixteen clients' matters had been put into suit; their names and their claims are public knowledge. They were certainly known to the defendants in their respective law suits. Plaintiff obtained many of its clients by referral from the Connecticut Citizen's Action Group ((CCAG), a non-profit advocacy organization concerned, inter alia, with aiding victims of lead paint poisoning. There was no showing that CCAG considered the names and addresses of or information relating to, people it referred to plaintiff as trade secrets, nor that such information would not be available to others on inquiry to CCAG. Of the four clients whose cases were not in suit, two elected to stay with ELS. ELS turned the files of a third over to Steele and Steele took the remaining file from ELS openly and with the knowledge of ELS attorneys.
Defendant Steele acquired the client list by proper means, in the course of his work for plaintiff. Having worked on the cases in question and established relationships with these clients, Steele was entitled to notify them of his change of employer and to signify his willingness to represent them if they so desired. ELS, if asked, was obligated to inform these clients as to where they could contact Steele. See Rules of Professional Conduct, Rule 5.6 There was no evidence that Steele contacted any of ELS' clients before his departure to solicit their business. Defendant CT Page 8979 Steele acquired expertise and experience during his stay with ELS. He was entitled to use those skills and knowledge after his departure from ELS.
The efforts made by ELS to maintain secrecy of the alleged trade secrets appear to be no more than the usual precautions taken by a law firm to ensure clients' files remain confidential. Not all confidential information meets the definition of trade secret. The existence in the firm's computer system of separate icons for asbestos and lead paint poisoning files is not persuasive evidence of security measures undertaken to protect trade secrets. The court finds no misappropriation of a trade secret by defendants.
 V
The plaintiff insists that the Rules of Professional Conduct are irrelevant to this matter and that defendants are barred from relying on said rules and certain informal opinions of the Committee on Professional Ethics of the Connecticut Bar Association (Informal Opinions Nos. 88-23; 97-14; and 97-15) as bases for their defense. Plaintiff relies on disclaimer language in the Rules' Preamble and in the last paragraph of Informal Opinion 88-23 (January 9, 1989) and cites Noble v.Marshall, 23 Conn. App. 227, 231 and Mazzochi v.Beck, 204 Conn. 490, 500-01, in further support of its position.
Plaintiff overstates his case. Noble v. Marshall, supra, holds that the Rules of Professional Conduct do not of themselves give rise to a cause of action. Mazzochi v. Beck, supra, noting that "every court that has examined this question has concluded that the Code of Professional Conduct does not, per se, give rise to a third party cause of action for damages", held that on that basis the plaintiff's complaint did not state a cause of action for legal malpractice. To posit that the holdings in these cases require the conclusion that the Rules of Professional Responsibility are irrelevant in the instant case is untenable.
The Rules of Professional Conduct, as adopted by the judges of the Superior Court, have the force of law, Mazzochi v.Beck, supra, at 501, fn. 7 (citation omitted). The Rules provide moral and ethical guidelines for lawyers engaged in the practice of law. Compliance with the Rules may not constitute a complete defense in a given case, but when, as here, a claim is CT Page 8980 made that an attorney improperly solicited clients of another, thus engaging in tortious interference with business expectancies, it is valid for a defendant assert his actions complied with the Rules of Professional Conduct and for the court to consider evidence regarding such assertion. Courts may use the Rules in assessing an attorney's conduct in a given case. See, eg,Sorrentino v. All Seasons Services. Inc.,245 Conn. 756, 775, where the court applied the factors listed in Rule 1.5(a) of the Rules of Professional Conduct in determining that a fee agreement was reasonable.
 VI
Apart from the factors enumerated in Town CountryHouse Homes Service Inc. v. Evans, supra, other considerations militate against plaintiff's claims. The plaintiff asks this court to recognize that the issues facing it in this case concern only the purely entrepreneurial or commercial side of the practice of law.
In discussing the application of CUTPA to the practice of law our Supreme Court has made it clear that an attorney is not exempt from CUTPA, Hayes v. Yale New Haven Hospital,243 Conn. 17, 34; but the court held that CUTPA covers only the entrepreneurial or commercial aspects of the profession of law, Id at 35. Accordingly, "the non-commercial aspects of lawyering — that is, the representation of the client in a legal capacity — should be excluded for public policy reasons", Id. As with CUTPA, so with UTSA.
Applying the standards of Haynes the court finds that the dispute presented here not purely entrepreneurial or commercial. The dispute between the parties here is as to who is entitled to represent the clients concerned. It necessarily implicates the clients' rights, including their right to choose their lawyers. The general rule is that a client may terminate the relationship between himself and his attorney with or without cause Colev. Myers, 128 Conn. 223, 229; Herbster v. NorthAmerican Co. For Life and Health Insurance, 501 N.E.2d 343
(1987), and should be free to seek and retain counsel of his choice, see, eg., Cohen v. Lord. Day Lord, 550 N.E.2d 410,411 (a forfeiture — for competition provision would "foreclose a withdrawing partner from serving clients who might wish to continue to be represented by the withdrawing lawyer and would thus interfere with the client's choice of counsel". CT Page 8981
Other aspects of the instant dispute demonstrate that the claim that the dispute is purely commercial or entrepreneurial cannot withstand scrutiny. Testimony established that in one or more cases plaintiff and defendants are engaged in a battle for representation in court, with competing appearances being filed. Such a conflict must necessarily involve "the representation of the client in a legal capacity" and could affect the progress of said clients' cases. It is more urgent to protect clients from attorneys than to protect attorney from successor attorneys,Perkins Mario. P.C. v Annunziata, 45 Conn. App. 237,241. The central issue in the case — the use by Steele of the client list — and the relief sought by the plaintiff — an order enjoining Steele from using the list — directly implicate the said clients' right to choose their representation. "While a law firm has a legitimate interest in its own survival and economic well-being and in maintaining its clients, it cannot protect those interests . . . by, in effect, restricting the choices of the clients to retain and continue the withdrawing member as counsel (citation omitted). Cohen v. Lord, Day Lord, supra, at 413.
Were the court to grant the relief requested, the clients' right to change counsel would be restricted. This would clearly be contrary to public policy.
Were plaintiff to prevail, a subclass of clients would be created, who, because of the complexity or esoteric nature of their problems, were limited in their right to change counsel. This, too, would be contrary to public policy.
The court notes in passing it is highly unlikely that the clients in question, in choosing ELS to represent them, contemplated that ELS thus acquired a proprietary interest in their names, addresses, telephone numbers, medical conditions and blood lead levels such as to restrict said clients' freedom to change lawyers as the clients see fit.
For the foregoing reasons, plaintiff's claim must fail. There being no violation of the Uniform Trade Secrets Act, there can be no wilful violation of the same. Since the plaintiff's CUTPA claim is predicated solely on the claimed violation of the Uniform Trade Secrets Act, this claim fails also.
 VIII CT Page 8982
In its Fourth Count, plaintiff alleges tortious interference with business expectancies, in that defendants solicited clients of the plaintiff following Steele's departure from ELS. Plaintiff failed to brief this claim, and the court may deem the claim abandoned, Sachem's Head Ass'n v. Lufkin, 168 Conn. 365,366. Because the claim is predicated on the same set of facts as are the other three counts the court will address the merits.
A cause of action for tortious interference with contract rights or other business relations has long been recognized. However, not every act that disturbs a business expectancy is actionable. For a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation or that the defendant acted maliciously. An action for intentional interference with business relations requires the plaintiff to plead and prove at least some improper motive or improper means, Robert S. Weiss Associates. Inc. v.Wiederlight, supra at 535, 536. (Citations omitted). The court finds that defendants' contact with the clients in question did not constitute solicitation, nor was improper motive or means shown.
Based on the evidence and testimony presented, plaintiff failed to establish, by a fair preponderance of the evidence, that defendants, by their conduct, tortiously interfered with plaintiff's reasonable business expectancies.
 VIII
The court finds that the plaintiff has failed to establish, by a fair preponderance of the evidence, its allegations that the defendant's conduct violated General Statutes, section 35-50 et seq., the Uniform Trade Secrets Act. That being the case, plaintiff has failed to establish, by a fair preponderance of the evidence, a wilful violation of the Uniform Trade Secrets Act.
Because plaintiff's CUTPA claim is predicated solely on defendants' violation of the Uniform Trade Secrets Act, plaintiff's CUTPA claim must also fail. Plaintiff has failed to establish, by a fair preponderance of the evidence, that defendants, by the conduct complained of, violated General Statutes, Section 42-110a et seq. Finally, plaintiff has failed CT Page 8983 to establish, by a fair preponderance of the evidence, that the defendants tortiously interfered with the reasonable business expectancies of the plaintiff.
Accordingly, the relief requested is denied and judgment on all four counts may enter for the defendants, John-Henry Steele and Brown, Welsh Votre, P.C.
By the court.
Downey, J.