[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. Procedural History
This action first came to this court by writ, summons and complaint dated June 24, 1994, filed July 18, 1994 and returnable July 26, 1994, wherein the plaintiffs claimed violation of a certain buy-back agreement concerning premises known as 20 Starrwood Drive, Norwich, by the defendants, and claimed in the prayer for relief:
1. specific performance of the buy-back agreement;
2. damages;
3. interest and costs; and,
 4. such other relief as in law or equity may appertain.
A copy of the agreement was attached to the writ.
The defendants appeared by counsel on August 2, 1994. CT Page 384 New counsel appeared for the plaintiffs on August 16, 1994. An amended complaint was filed on August 18, 1994 in three counts claiming substantially the same relief on the same facts, and adding a claim for punitive damages.
An answer to the amended complaint was filed on September 2, 1994 to the three counts and setting forth three special defenses as follows:
 1. Plaintiffs are in breach of their obligations under the buy-back agreement.
 2. Because of plaintiffs breach of the buy-back agreement, performance by the defendants was made impossible.
3. Plaintiffs have failed to mitigate damages.
A reply by the plaintiffs was filed on December 8, 1994.
An amended answer dated June 6, 1995 was filed setting forth now four special defenses. The additional special defense, beyond what had earlier been filed, claims lack or failure of consideration.
A second amended answer dated June 28, 1995 was filed and now five special defenses which in addition to the special defenses already noted added claiming failure to comply with a condition precedent. A new reply to this pleading was filed September 29, 1995 closing the pleadings.
THE COURT MAKES THE FOLLOWING FINDINGS OF FACT.
The plaintiff Craig Munzer resides at 249 Broadway, Norwich, with his spouse Patricia Munzer. Mr. Munzer is a naval architect having graduated from New York Maritime College in May, 1989. Mr. Munzer is employed by General Dynamics (Electric Boat).
Mrs. Munzer is employed by Sonalyst as a graphic designer.
At some point in time in 1989, Mr. Munzer saw an ad in a newspaper concerning a 24-unit condominium complex known as Starrwoods. Mr. Munzer first visited the complex, CT Page 385 subsequently Mrs. Munzer viewed the unit. At one point a salesperson showed the unit to the plaintiffs. On December 8, 1989, the plaintiffs entered into and executed a certain purchase agreement with the defendant SMS Associates agreeing to purchase unit E1-17 for and in consideration of the sum of $115,000.00. (See Plaintiffs' Exhibit A.)
The purchase agreement provided for a closing on or before May 15, 1990. An actual closing occurred on May 9, 1990. The unit now being known as 20 Starrwood Drive, and at the closing a certain "Buy-Back Guaranty" was executed by the plaintiffs and defendant at the closing. (See Plaintiffs' Exhibit B.) The relevant portions of plaintiffs' exhibit B are set forth herein.
"Buy-Back" Guaranty
 Granted to: Craig and Patricia Munzer Subject Property: 20 Starrwood Drive, Norwich, Connecticut Guarantor: SMS Associates, 207 West Town Street, Norwich, Connecticut
 On May 9, 1990, SMS Associates hereby agrees to purchase the subject property described on Exhibit A from Craig and Patricia Munzer for the agreed upon price of one hundred seventeen thousand six hundred dollars ($117,600), subject to the following conditions:
 1. Craig and Patricia Munzer notify SMS Associates in writing on or before 42 months after closing date above of their intent to convey the property to SMS Associates as per the provisions of this Buy-Back Guaranty.
 2. The condition of the property interior is in working order and free of damages, reasonable wear and tear excepted. SMS Associates will be granted the right to inspect the property seven (7) calendar days prior to closing date.
 3. SMS Associates will be granted the right to list the property on the open market upon receipt of notice from Craig and Patricia Munzer as per theCT Page 386 terms of paragraph 1 hereof. Craig and Patricia Munzer will cooperate with SMS Associates in showing the property as well as keeping the property presentable for showing during this time period.
 4. This guaranty is not transferable or assumable to any other party other than Craig and Patricia Munzer.
 5. This guaranty expires 48 months after closing date, dated at Norwich, Connecticut, this 9th day of May, 1990.
The plaintiffs were represented at the closing by Attorney Donald J. DiFrancesca. Plaintiffs secured a mortgage from the McCue Mortgage Company in the amount of $109,000.00. (See Defendant's Exhibit 1.)
Plaintiffs monthly mortgage payment was $1,324.75 ($1,224.00 PI plus $100.00 condo fee).
The original purchase agreement and a form buy-back agreement were reviewed for the plaintiffs by Craig Munzer's father and the father's attorney. On October 22, 1993, Attorney DiFrancesca, on the plaintiffs behalf, sent a letter to the defendant giving notice that the plaintiffs were exercising their Buy-Back Guaranty rights. (See Plaintiffs' Exhibit C.) This notice is within 41 months of the execution of the Buy-Back Agreement.
The Starrwoods purchase was plaintiffs first real estate purchase. The plaintiffs had no contacts with the principals of SMS Associates until the purchase agreement was actually executed.
The buy-back agreement was not mentioned in the December 8, 1989 purchase agreement nor its addendum.
On November 17, 1993, Mr. Munzer was presented with an exclusive listing agreement from William Raveis Real Estate with a listed selling price of $109,900.00. This listing was never executed. (See Plaintiffs' Exhibit G.) This listing agreement contained the following, "this listing agreement is contingent upon the execution of the Buy-Back Guaranty between CT Page 387 SMS Associates and Patricia and Craig Munzer." A week prior to receipt of Exhibit G, Mr. Munzer had received a listing agreement concerning the subject unit but had torn it up. Exhibit G was forwarded to Munzer's attorney.
At the time of the closing on May 9, 1990 of the subject unit, the defendant SMS Associates gave Munzer a rebate against the purchase price of $3,000.00. (See Plaintiffs' Exhibit 5.)
On December 2, 1993, Munzer's attorney wrote SMS Associates questioning the listing price in Exhibit G and raising the issue of liability as to the payment of a commission. (See Plaintiffs' Exhibit H.) On January 13, 1994, there was a meeting attended by Attorney Gordon, counsel for SMS Associates, Attorney DiFrancesca, counsel for Munzer, and one of the principals of SMS Associates concerning the marketing of the subject unit. Munzer suggested Performance Realty as a listing agent. On February 10, 1994, Munzer et ux signed an exclusive listing agreement with Performance Realty Group concerning the subject unit. The listed price was $97,000.00 and the agreement contained the words "Brom Builders — SMS Associates agree to pay the real estate commission of six percent at closing." (See Plaintiffs' Exhibit I.)
Munzer et ux vacated the condo unit in December, 1993. The unit was vacant during the period of December, 1993 to September, 1994. In September, 1994, plaintiffs leased the unit for one year at the monthly rate of $750.00. (See Plaintiffs' Exhibit 0.) The following paragraph was part of the lease:
 Currently there is a buy back guaranty on 20 Starrwood Drive Norwich, CT. SMS Associates guaranteed to buy back 20 Starrwood Drive from Craig and Patricia Munzer by May 1994. To this date they have not upheld this agreement. If SMS Associates agrees to uphold their agreement to buy back the said property, or to settle the agreement with Craig and Patricia Munzer it is necessary not to have the property rented or occupied. To satisfy the conditions above, both the landlord and the tenant have the right to terminate the lease, provided 30 days notice has been given to the other CT Page 388 party. Any security deposit will be returned to the tenant.
The September, 1994 lease has been renewed at the same rent and the same tenant remains in possession to this date. The subject unit is not presently exposed for sale. The tenant has been responsible and has not committed any waste or damage.
Joseph Mastronunzio is age 41. His education extended through one year of college. He has been involved in developments and construction since 1978 as Brom Builders and since 1981 as a member of SMS Associates. SMS Associates own a one percent interest in Summit Woods where Dime Savings is involved.
Starrwoods construction commenced in 1989 involving 25-26
units. The contractor was Brom Builders. The purchase agreement of December 8, 1989 was signed by Americo Mastronunzio, Joseph's brother. The buy-back agreement was prepared by Attorney Jacobson. In all of the sales of the Starrwood units there were only three buy-back agreements including Munzer. The William Raveis Agency was the chosen agent by SMS Associates inasmuch as SMS had dealt with Raveis earlier on the luxury complex known as New Concord Green and because Raveis had an extensive in place listing network.
Performance Realty was not the defendant's selected listing agent. The granting of the right to list belonged to SMS. (See ¶ 3 of the Buy-Back Agreement.) SMS Associates still owns one unit in Starrwoods. SMS rents the unit it owns in Starrwood for $950.00 per month. SMS received the October 22, 1993 letter giving notice of Munzer's election to exercise the buy-back agreement on October 26, 1993. On October 26, 1993, SMS replied to Attorney DiFrancesca by letter. (See Plaintiffs' Exhibit D.) This letter gave notice of inspection of the unit for November 9, 1993, requested that the unit be in pristine condition and referred to concerns as to contemplated changes in the Starrwoods Association rules. The unit was inspected on November 9, 1993 and found to be in good order. (See the three color photographs marked as Defendant's Exhibit 4; see also Plaintiffs' Exhibit E.)
At the time of the submission of the proposed listing with Raveis it was felt by SMS that $109,900 was the most CT Page 389 realistic listing price mindful of market conditions.
The subject premises known as 20 Starrwood Drive were appraised on October 18, 1995 by Sid Nagel Realty, Inc. and valued at $88,000.00.
At no time prior to or on December 8, 1989 did Craig or Patricia Munzer have any discussions with any of the individual defendants.
On December 8, 1989, the plaintiffs signed a Purchase and Sales Agreement (the "Agreement") (Exhibit A) for the purchase of Unit E-1 at Starrwoods. Paragraph 17 of this document provides "This Agreement supersedes any and all prior understandings and agreements of any kind between the parties and its terms constitute the entire agreement" . . .and that [SMS Associates] would only be bound by the Agreement and Public Offering Statement.
Americo J. Mastronunzio executed the Agreement on behalf of SMS Associates. This agreement as executed makes no reference whatsoever to the Buy-Back Guaranty.
At no time subsequent to December 8, 1989 and prior to closing did the Munzers have discussions with any of the defendants or their representatives concerning the Buy-Back Guaranty.
The Munzers obtained a mortgage of $109,000.00 and a closing on Unit E-1 took place on May 9, 1990. At closing, although not set forth in the settlement statement (Exhibit 1) the plaintiffs received a check in the amount of $3,000.00 in accordance with a Cash Rebate Agreement (Exhibit S) and a Buy-Back Guaranty was signed by the parties. (Exhibit B.)
This Buy-Back Guaranty (Exhibit B) conditioned the performance of SMS Associates upon the following: (a) that it receive timely notice of the Munzers' intention to reconvey Unit E-1; (b) that the Unit be found to be in acceptable condition; and (c) that SMS be given the opportunity to list and market this Unit for a period of not less than six months. This Guaranty expired May 9, 1994 and contained no recitation of consideration for the commitment by SMS Associates.
On October 26, 1993, SMS Associates was served with CT Page 390 timely notice from Attorney DiFrancesca that his clients intended to reconvey their condominium pursuant to the provisions of the Buy-Back Guaranty (Exhibit C).
By letter dated october 29, 1993 (Exhibit D), Joseph Mastronunzio responded to Attorney DiFrancesca advising him of the conditional nature of the Guaranty and concerns about rental restrictions imposed by the Condominium Association.
By letter dated November 15, 1993 (Exhibit E), Joseph Mastronunzio informed the Munzers that their unit was inspected and found in excellent condition and that its agent, Nancy Gordon of the Raveis Agency, would be contacting them with respect to listing the unit for sale.
SMS Associates selected the William Raveis Agency and Nancy Gordon because it had an on-going relationship with each, was confident in this agent's ability to sell the unit and that Raveis's statewide presence offered the possibility of referrals among its agents and branch offices, thus increasing the likelihood of a sale.
At about this time, SMS Associates and its real estate agent, Nancy Gordon, met to discuss a marketing program, the time limitations within which the Munzer unit had to be sold, and an appropriate asking price. It was agreed that the Munzer unit was not at that time worth $117,600.00 and that an asking price of $109,000.00 was appropriate and expected to generate interest among potential buyers and other area real estate agents.
In keeping with this marketing strategy, on or about November 15, 1993, Nancy Gordon presented a listing contract to Mr. and Mrs. Munzer which established an asking price of $109,000.00. This listing contract was torn up by Mr. Munzer without explanation to SMS Associates or its agent.
On November 17, 1993, Nancy Gordon resubmitted a listing contract to the Munzers similar to the prior listing agreement and made subject to the Buy-Back Guaranty. (Exhibit G.)
After the passage of a day or two, both Nancy Gordon and Joseph Mastronunzio spoke with the Munzers concerning the listing agreement. Each was informed that the Munzers were not happy with the asking price, were concerned about the CT Page 391 commission and had turned the listing agreement over to Attorney DiFrancesca. Mastronunzio assured the Munzers that SMS Associates was obligated to pay $117,600.00 and would have to make up the difference if the sale of their condominium were to net less than what was owed.
By letter dated December 6, 1993 (Exhibit H), Joe Mastronunzio suggested a meeting with the Munzers and their counsel at their earliest convenience.
The parties and counsel finally met on January 12, 1994. As a consequence of the Munzers' failure to sign the listing contract as presented, as a consequence of their refusal to list their unit with the agent selected by SMS Associates, all of which denied SMS Associates its contractual right to market the subject property, Joseph Mastronunzio informed all present that it was his belief that the Munzers were in breach of the Buy-Back and SMS Associates was no longer required to repurchase this unit.
On or about February 4, 1994, SMS Associates learned that the Munzers had signed a listing agreement with Performance Realty at an asking price of $97,000.00. The listing contract provided that the commission would be paid by SMS Associates or their affiliate Brom Builders. (Exhibit I.) At no time did SMS Associates or Brom Builders so agree.
The listing price of $97,000.00 was lower than that previously recommended by SMS Associates and Nancy Gordon and subsequent to the Munzers being declared in default of the Buy-Back Guaranty.
The Munzer condominium is no longer listed for sale and has not been listed subsequent to the expiration of the Performance Realty listing agreement.
Discussion
The Buy-Back Guaranty is unenforceable due to a failure ofconsideration.
At trial, the plaintiffs acknowledged that the Buy-Back Guaranty was signed by the parties at closing. The plaintiff, Craig Munzer, recalled receiving a form of Guaranty along with a proposed Purchase and Sale Agreement, both of which were CT Page 392 reviewed by him, his father and his father's attorney. The Purchase Agreement was signed on December 8, 1989. It makes no mention of the Buy-Back Guaranty. Craig Munzer admitted that from the time he received the form of Guaranty until the date of closing, he had had no discussions with any of the defendants or their representatives concerning this Buy-Back. When the Guaranty was signed at closing, SMS Associates received nothing for its commitment to repurchase. The instrument itself makes no recitation of consideration given. The promise by SMS Associates to repurchase was not supported by additional consideration. The failure of consideration makes this Buy-Back Guaranty unenforceable. TIECommunications, Inc. v. Kopp, 218 Conn. 281.
The Buy-Back Guaranty is unenforceable due to a failure ofcondition precedent.
Under the terms of the Buy-Back, SMS Associates was given the right to sell the subject condominium during the six month period immediately prior to May 9, 1994. This right to sell was a condition precedent to the enforcement of the Guaranty.
A condition precedent is "a fact or event which the parties intend must exist or take place before there is a right to performance." Lach v. Cahill, 138 Conn. 418.
This right to sell required the plaintiffs to sign a listing agreement (CGS § 20-325a and b cooperate in the showing of the property.
Craig Munzer admitted at trial that in exercising its contractual right to sell, SMS Associates had the right to select its own real estate agent. There can be no question from the testimony that SMS Associates and its agent acted responsibly and diligently in their efforts to have the condominium listed for sale. Despite their efforts, the Munzers refused to list their property for sale.
The uncontradicted evidence shows that the Munzers refused to sign the listing agreement for the following reasons:
 1. The suggested listing price of $109,000.00 was too low.
CT Page 393
Joseph Mastronunzio testified at trial that in October of 1993 he did not believe the Munzer unit was worth $117,600.00. In order to sell this unit within the six month period, it was very important that the unit be priced so as to attract potential buyers and arouse the interest of area real estate agents. The price of $109,000.00 was selected after consultation with his real estate agent. No matter what the condominium ultimately sold for, if the proceeds were less than $117,600.00, SMS Associates would have to make up the difference.
 2. The listing agreements obligated the Munzers to pay a real estate commission.
Munzer's posture ignored the plain, clear language of the Guaranty; SMS Associates was required to pay the Munzers $117,600.00. On repeated occasions, Joe Mastronunzio attempted to reassure then of this but to no avail.
 3. The Munzers objected to the real estate agent selected by SMS Associates.
From the testimony, it was clearly understood by all parties that the Buy-Back Guaranty gave SMS Associates control over the marketing of this condominium. Nancy Gordon of the William Raveis Agency was selected by SMS. The reasons for selecting this particular agent were compelling.
The conduct of the defendants did not violate the ConnecticutUnfair Trade practices Act (CUTPA 42-110a et seq.).
The plaintiffs assert that the defendants' conduct constituted a violation of CUTPA. In determining whether conduct violates CUTPA, our Supreme Court has embraced the criteria enumerated in the so-called cigarette rule, adopted by the Federal Trade Commission. Conway v. Prestia, 191 Conn. 484. This determination is dependent upon all of the circumstances of this dispute. Atlantic Richfield Co. v.Canaan Oil Co., 202 Conn. 234. Here the underlying facts are undisputed. Of the 24 units sold at Starrwoods, only three buyers were offered Buy-Back Guaranties. Of these three, the Jacobson unit was repurchased by SMS Associates; the Fearns opted not to reconvey; and the validity of the Munzer Guaranty is at issue. There is absolutely nothing in the record to even suggest that the defendants' conduct (1) offended public CT Page 394 policy; (2) was immoral, unethical or oppressive; or (3) caused substantial injury to consumers. Noble v. Marshall,23 Conn. App. 227.
The plaintiffs have failed to establish their CUTPA claim.
The plaintiffs are not entitled to specific performance.
In an action for specific performance, the court is to be guided by the equities in the case. Schneidau v. Manley,131 Conn. 285. One who seeks specific performance must demonstrate compliance with the requirements imposed upon him under the contract. Automobile Ins. Co. v. Model FamilyLaundries, Inc., 133 Conn. 433.
The plaintiffs failed to meet all of their contractual obligations under the Buy-Back Guaranty.
The plaintiffs are not entitled to money damages.
This is a contract action. Damages for breach of contract are determined at the time of the breach and are designed to place the injured party in the position he would have been had the contract been performed. West Haven SoundDevelopment Corp. v. City of West Haven, 207 Conn. 308;Beckman v. Jabich Homes, 190 Conn. 299.
One can argue that the time of the breach in this matter was January 12, 1994, the date the plaintiffs were informed that SMS Associates would not repurchase their condominium, or May 9, 1994, the contract date by which the Munzers were to be paid $117,600.
Had SMS Associates repurchased the Munzer condominium during the period of October 26, 1993 and May 9, 1994, from the sales proceeds the Munzers would have paid off their mortgage which encumbered the condominium, paid their closing expenses, and pocketed the difference, if any. We know that the Munzers obtained a mortgage of $109,000 at the time they purchased their unit (Exhibit 1), but no evidence whatsoever was introduced as to the balance of this mortgage as of May 1994 or subsequent to October 26, 1993. Consequently, there is insufficient evidence from which the Court could base an award of damages; the damages being the money the Munzers CT Page 395 would have pocketed net of their mortgage payoff and closing expenses.
The Munzers argue that they should be awarded the difference between the $117,600 and the appraisal value of the condominium, $88,000. This argument ignores the fact that this is an action for breach of contract.
By way of recapitulation.
The critical document with which we are involved is the buy-back guaranty, Exhibit B.
As indicated, that instrument provided:
(1) Notice in writing from Munzer to SMS Associates within 42 months of Munzers' intent to convey. This condition was complied with.
(2) The requirement that the premises were in good order, free of damage and the right of SMS to inspect.
The condition of the premises was excellent as portrayed by the photographic exhibits. This condition was complied with.
(3) SMS was granted the right to list the property on the open market upon receipt of notice from Munzer, per number (1) above and that Munzer should cooperate with SMS in showing the property. This condition was not complied with by Munzer.
The right to have the property listed belonged to SMS.
In order to accomplish the listing, Munzer had to sign the same. SMS was entitled to select the agent, not Munzer.
For reasons patently clear, SMS selected Raveis because of prior dealings and Raveis' wide network of exposure.
It was important to SMS To have the property listed promptly with the agent of their choice. The importance placed on this right that belonged to SMS is graphically spelled out in the second paragraph of SMS' letter to Attorney Donald DiFrancesca dated October 29, 1993. Plaintiff's Exhibit D. CT Page 396
There was no justification for Munzer to tear up the first listing or the subsequent refusals to sign others presented by SMS through the Raveis Agency. Even though the listing agreement presented at a price of $109,000 was less than the figure in the buy-back guaranty, the reason for the selection of the $109,000 figure was clearly made known and was a realistic assessment of market conditions.
Listing the unit at the $109,000 did not relieve SMS of its obligation to make up any difference between the $109,000 and the $117,600, but SMS was entitled to call the tune as to the listing agreement.
Munzer was also concerned about having to pay a commission to an agent but the buy-back guaranty was silent on that point and a reasonable assessment of the overall factual situation would have clearly suggested that the seller Munzer would be responsible for a commission.
The listing agreement which was requested by SMS with Raveis as the agent clearly envisioned or hoped for a sale to some third party. How could Munzer not expect to pay a commission.
The letter from Attorney Gordon to Attorney DiFrancesca dated January 24, 1994, Plaintiff's Exhibit K, has caused the court some concern. However, the court has focused on what it believes are the critical documents, the Starrwoods purchase agreement, Plaintiff's Exhibit A, and the buy-back guaranty, Plaintiff's Exhibit B.
Munzer did not list the property as required by the guaranty nor did Munzer cooperate with SMS in terms of listing the premises and arranging to show the same to prospective purchasers. Munzer breached the agreement.
Judgment may enter in favor of the defendants.
Austin, .J CT Page 397