[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION FOR SUMMARY JUDGMENT # 117 MOTION FOR SUMMARY JUDGMENT # 113
The factual background before the court applies to both the cases at hand. The first case, Standish v. Sotavento Corp. , is a CT Page 7793 derivative suit. The second case, Sotavento Corp. v.Morningside Partners, LP., is a debt action seeking payment on monies allegedly due.
The Sotavento Corporation (Sotavento), the defendant in the Standish action and the plaintiff in the Sotavento action, is a Connecticut licensed brokerage, the principal officer and shareholder of which is Samuel Braunstein (Braunstein). Braunstein is also a partner in the law firm of Braunstein Todisco. Morningside Partners (Morningside) is a Connecticut limited partnership. Morningside is the named defendant in the debt action and also a defendant in the derivative action. The named plaintiff in the derivative action, Peter Standish, is one of the limited partners of Morningside. Other limited partners of Morningside are also part plaintiffs in the derivative action. Collectively, these limited partners will be referred to as "Standish."
In a two-count complaint dated February 29, 1996, Standish initiated a derivative action against the defendants Sotavento, Morningside and Charles Lemieux (Lemieux), the general partner of Morningside. The complaint alleges that Lemieux, while purportedly acting as the general partner of Morningside, executed a note to Sotavento in the amount of $150,000. According to the complaint, Lemieux acted without authority when making this note and the purpose of the note was not for the overall good of the limited partners, but rather for Lemieux's own benefit. The complaint further alleges that Sotavento was, or should have been, aware of Lemieux's intent. The first count alleges that the actions of Sotavento and Lemieux jeopardized the assets of Morningside and made Morningside property subject to foreclosure. As such, the first count alleges, "it is unfair, inequitable and in violation of law for Sotavento to have the benefit of the note and mortgage referred to." The second count of the derivative action alleges that the actions of Lemieux and Sotavento constituted a violation of the Connecticut Unfair Trade Practices Act (CUTPA).
After the above derivative action had been instituted, Sotavento, in a complaint dated November 20, 1996, initiated a separate action against Morningside seeking immediate payment due on a note previously executed with Morningside as security for a loan made under a revolving credit agreement.[1] On October 16, 1997, Sotavento filed a motion for summary judgment (#113) against Morningside in the debt action, to which Morningside CT Page 7794 filed an objection on January 20, 1998. On October 17, 1997, Sotavento filed a motion for summary judgment (# 117) against Standish in the derivative action, to which Standish filed an objection on January 20, 1998. The parties involved also filed extensive memoranda of law supporting their respective positions.
"The standard of review for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving part is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving part. . . . Although the part seeking summary judgment has the burden of showing the nonexistence of an material fact . . . a part opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing part merely to assert the existence of such a disputed issue. Mere assertions of fact. . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . ." (Citations omitted; Internal quotation marks omitted.)Maffucci v. Royal Park Limited Partnership, 243 Conn. 552, 554,___ A.2d ___ (1998).
 I. The Derivative Action
In Standish v. Sotavento Corp. , Standish filed a two-count complaint against Sotavento alleging that Sotavento knew that certain agreements made with the general partner were outside the scope of the powers conferred on the general partner. The first count alleges that, as a result, it is unfair that Sotavento reap the benefits of the agreement. The second count alleges that the actions of Sotavento constitute a violation of CUTPA.
Sotavento move for summary judgment against Standish on the ground that there is no genuine issue of material fact in the case and it is entitled to judgment as a matter of law. Sotavento argues that the money obtained by Lemieux was for the benefit of Morningside. Furthermore, Sotavento argues that it is undisputed CT Page 7795 that Lemieux was acting under his authority as general partner of Morningside when he executed the note with Sotavento that secured the loans. In support of the motion for summary judgment, Sotavento offers the affidavits of Lemieux and Braunstein, the principal of Sotavento. Among the exhibits attached to the affidavits are the partnership agreement, the promissory note and the revolving credit agreement between Sotavento and Morningside. In the alternative, Sotavento argues that the limited partners lack standing to sue.
Objecting[2] to the motion for summary judgment, Standish argues that Sotavento should have known that the money loaned Morningside via Lemieux was being used for purposes other than the welfare of Morningside. In part, Standish bases this argument on the fact that Braunstein, the principal of Sotavento, was also a partner in a law firm, Braunstein Todisco, that performed legal services for Morningside and Lemieux. Standish argues that under the circumstances Sotavento had constructive knowledge that Lemieux was acting in bad faith and for the purposes of self-dealing. Furthermore, Standish argues that Braunstein's role in Braunstein Todisco created a fiduciardut to the limited partners which was violated by his subsequent actions on behalf of Sotavento.
General Statutes § 34-47[3] (repealed July 1, 1997) states that the actions of a general partner bind the partnership if the general partner was acting within the scope of his authority. If the general partner acts outside the scope of his authority, then the partnership is not bound in situations where the part with whom the general partner is dealing knows that the general partner is acting outside the scope of his authority. See Connecticut National Bank v. Cooper,232 Conn. 405, 417, 656 A.2d 215 (1995). At least one court has held that under § 34-47, a person has knowledge of such peripheral dealings when he has actual knowledge that the contemplated action is outside the scope of the partnership or "when he has knowledge of other facts and circumstances which show bad faith."Case v. Connell, Superior Court, judicial district of Litchfield, Docket No. 046353 (September 6, 1990, Pickett, J.).
The stated purpose of the Morningside partnership "is to acquire, finance, manage, and operate the Property and deal with the Propert in everyway as an owner thereof, such activities being referred to herein as the `Project'." (Affidavit of Lemieux, Exhibit A, Agreement of Limited Partnership, P 2.3, CT Page 7796 "Purposes"). In furtherance of this purpose, the limited partnership is given a broad range of powers. (Agreement of Limited Partnership, ¶ 2.4, "Powers"). As to the powers of the general partner, the partnership agreement states that "[t]he general Partner shall manage the business and affairs of the Partnership and shall have all power and authority necessary, useful or convenient to enable him to do so. . . ." (Agreement of Limited Partnership, Article VIII (1)). In particular, the general partner is given authority to "acquire, manage, sell, transfer, distribute, finance or refinance any property or assets . . ." and the authority to "employ personnel . . . including contractors, brokers, mortgage lenders, leasing agents, consultants, on site managers, insurance members, attorneys, accounts [sic] and other agents or professionals." (Agreement of Limited Partnership, Article VIII, ¶ 1(a), (b)).
Although the above reveals a broad range of powers given the general partner, Standish argues that the authority of the general partner is limited by and subject to the direct purpose of the partnership. Standish argues that several actions taken by Lemieux under the terms of the loan were outside the scope of the partnership and thus not authorized as legitimate acts of the general partner.[4] According to Standish, the existence of actions with a purpose outside the scope of the partnership would surely have been known to Braunstein, acting in his capacity as attorney to Lemieux and Morningside. Thus, Standish continues, Sotavento, the president of which was Braunstein, would also have reason to know that some of the loan advances were not subject to the revolving credit agreement or were intended for purposes other than the limited partnership.
It appears to the court that the issues raised by Standish, while raising questions of material fact concerning the amount of money allegedly owed to Sotavento, do not raise any questions of material fact as to the legitimacy of the revolving credit agreement (and note) entered into by solvent and, via Lemieux, Morningside Partners. The numerous issues raised by standish ultimately ago to the amount of debt that solvent may collect. The evidence offered by Standish does not raise any issues of fact about the ability of Lemieux to enter into the credit agreement. The ability of the general partner to enter into such agreement is explicit in the limited partnership agreement. While the power of the general partner is limited to the furtherance of the aims and goals of the limited partnership, Standish has not offered any evidence which would show that CT Page 7797 Sotavento knew that, at the time the agreement was entered into, Lemieux intended to use the loan proceeds for non-limited partnership uses.
The circumstances of the present case are distinguishable from caselaw cited by Standish. In Case v Connell, supra, Superior Court, Docket No. 046353, the court found that the attorney for the defendants had knowledge of facts creating "infirmity" in the subsequent transactions. In that case, the attorney had actual knowledge that the business transactions were prohibited by the partnership agreement and that the individual borrowing money was doing so for his personal uses. Id. In Chelsea National Bank v. Lincoln Plaza Towers Associates, 461 N.Y.S. 328, 330 (1983), the court found that the general partner did not have the authority to establish the partnership as a guarantor on a loan personally guaranteed by the signing general partner.
In the present case, the general partner did have the authority to bind the partnership provided that the act was in furtherance of the partnership. See Affidavit of Lemieux, Exhibit A, Limited Partnership Agreement. Unlike the Connelly
case, there is no evidence that the lender, Sotavento, was aware, at the time the revolving credit agreement was made and the note executed, of any intentions on the part of Lemieux to use the loan money for purposes other than that of the partnership. Rather, the evidence suggests the opposite. Evidence offered by Sotavento reveals that the partnership was in financial and legal difficulties and needed credit to deal with these problems. Braunstein offered the Sotavento loan to Lemieux only after being informed of these outstanding obligations. (Affidavit of Braunstein, October 10, 1997, ¶¶ 4-5.)
The circumstances under which the loan was made substantiate the argument that Sotavento, when making the note, lacked any indication that suggested any sort of bad faith on the part of Lemieux toward the partnership. Unlike the factual pattern of the cases cited by Standish, Sotavento's president reviewed the Morningside Partnership Agreement and thus had first-hand knowledge as to the ability of Lemieux to enter into any agreements. (Affidavit of Braunstein, October 10, 1997, ¶ 6). The agreements, furthermore, were reviewed and ratified by separate attorneys hired by Lemieux. (Affidavit of Lemieux, October 7, 1997, ¶ 11).
Standish, nonetheless, argues that Braunstein's actions on CT Page 7798 behalf of both Braunstein Todisco and Sotavento were of conflicting interests toward Lemieux and Morningside and thus a breach of fiduciar duty.[5] Standish points out that under the Rules of Professional Conduct, an attorney contemplating a business proposition with a client must inform the client, in writing, that the client should seek review of the agreement with a third attorney. This standard, Standish claims, was violated in that Braunstein merely orally informed Lemieux of the right to seek counsel from another attorney.
Whether Braunstein has violated the Rules of Professional Conduct in the present case is not a matter before the court, but should properly be addressed to the statewide grievance committee. Nonetheless, it should not be overlooked that there is evidence to support the fact that Lemieux did act on Braunstein's oral advice in seeking the agreement's approval with an outside attorney. Even if Braunstein's actions did constitute a professional breach, a possible infraction of the Rules of Professional Conduct would not create an issue of material fact that would preclude the granting of a motion for summary judgment. For one, a violation of the Rules of Professional Conduct does not give rise to a cause of action. Noble v. Marshall, 23 Conn. App. 227,231, 579 A.2d 594 (1990); see also Mozzochi v.Beck, 204 Conn. 490, 501 nn. 7-8,529 A.2d 171 (1987). Moreover, a possible infraction of the Rules of Professional Conduct does not raise any questions concerning the power of Lemieux to enter into an agreement on the behalf of Morningside. The argument that a violation of the Rules of Professional Conduct by Braunstein is enough to create constructive knowledge on the part of Sotavento as to the future misapplication of funds by Lemieux is speculative at best.
Sotavento is entitled to summary judgment on the two counts alleged by Standish and the other limited partners of Morningside partners. Standish has not offered any evidence showing that the revolving credit agreement and the mortgage securing that agreement were made in bad faith or outside the borders of the partnership agreement. Standish's evidence does not show any facts that indicate that Sotavento, at the time the revolving credit agreement and mortgage were entered into, had any knowledge, actual or constructive, to indicate that money loaned would be used for purposes other than the Morningside Partnership. The revolving credit agreement and mortgage note securing that agreement were made by Sotavento and Lemieux, a general partner with the explicit authority to bind the limited CT Page 7799 partnership. The evidence offered by Standish raises issues that challenge the amount loaned by Sotavento under the revolving credit agreement, and not the actual legitimacy of the agreement itself.[6] Therefore, in light of these facts, Standish has failed to establish a genuine issue of material fact with regard to its claim that the loan agreements are invalid and voidable.
Accordingly, Standish cannot, as a matter of law, state a CUTPA action against Sotavento. Moreover, disputes that take place between partners or shareholders in the business generally may not give rise to a CUTPA cause of action. See Cassidento v.Mathis, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 537124 (January 24, 1996, Aurigemma, J.). Evidence offered by the parties indicates that Lemieux was acting on behalf of and with full authority of the partnership when the note was made. This authority was made apparent to Sotavento and no offered evidence suggests anything to the contrary. Any issues that Standish and the limited partners have in respect to the actions taken by Lemieux should be addressed to him, not Sotavento. To now allow Standish to maintain a CUTPA action against Sotavento would be an abuse of that statute in creating a CUTPA cause of action against a third-party in what essentially is an intrinsic conflict between partners in a limited partnership over how the general partner conducted the business of the partnership entrusted to him.
Finally, Standish argues that under the present circumstances a motion for summary judgment is inappropriate. Standish argues that the limited partners are entitled to additional time in order to conduct further discovery. Specifically, Standish argues that it needs additional time to secure the deposition of Lemieux and that without this deposition it will not be able to provide further evidence to contradict Sotavento's motion for summary judgment.
Practice Book § 382, now Practice Book (1998 Rev.) § 17-47 states that: "Should it appear from the affidavits of a party opposing the motion that such party cannot, for reasons stated, present facts essential to justify opposition, the judicial authority may deny the motion for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just." Practice Book § 382, now Practice Book (1998 Rev.) § 17-47 (quoting from revised section). CT Page 7800
On October 31, 1997, Standish filed a motion for extension of time to file papers in opposition to the motion for summary judgment. Pursuant to Practice Book requirements, the motion was supplemented with an affidavit of the attorney for Standish attesting to the unavailability of Lemieux. On November 10, 1997, Standish submitted another affidavit from their attorney as well as an affidavit from Peter Standish reaffirming the unavailability of Lemieux and his unknown whereabouts. Acting on the motion for the extension of time, this court granted a sixty day extension to enable Standish to complete discovery that was essential for the opposition of the motion for summary judgment.
In its memorandum of law in support of its objection to the motion for summary judgment dated January 20, 1998, Standish again argues that the motion for summary judgment should be denied because Standish needs additional time to complete discovery to successfully oppose the motion for summary judgment. A review of the file indicates that no additional affidavits have been filed.
The court has previously granted an extension of time to Standish. Furthermore, Standish has not submitted any new affidavits describing efforts to reach Lemieux during the extension period granted by the court. As such, Standish's argument for additional time is without merit.
Therefore, Sotavento's motion for summary judgment against Standish is granted.
The Debt Action
In Sotavento Corp. v. Morningside Partners LP (the debt action), Sotavento has filed a complaint against Morningside seeking to collect the balance owed Sotavento under the terms of a revolving credit agreement that Lemieux, acting on behalf of Morningside, obtained from Sotavento. The complaint alleges that Sctavento loaned Morningside a total of $137,250. In the complaint, Sotavento seeks recovery of the remaining $102,895.28 that is allegedly owed by Morningside. Sotavento has moved for summary judgment as to the liability of Morningside and for the alleged amount owed.
Morningside argues that a motion for summary judgment is inappropriate in the present case because Morningside needs additional time in which to conduct discovery in order to oppose CT Page 7801 the motion for summary judgment. This argument is discussed in the derivative action, supra, and, for the same reasons, is without merit as to the present debt action.
On a separate ground, Morningside objects to the motion for summary judgment and argues that Sotavento has failed to provide any competent evidence that would show that any sort of monies were provided to Morningside under the terms of the revolving credit agreement. Thus, Morningside questions whether it actually received the bargained-for consideration in return for the execution of the promissory notes and other documents pertaining to the revolving credit agreement. Morningside argues that Sotavento's prepared schedule detailing the various loans is inaccurate and inappropriately summarizes documents (such as actual checks, receipts and other business statements) that were unavailable to Morningside. Moreover, Morningside argues that Sotavento cannot produce any records that would provide competent evidence as to the claimed debt owed to Sotavento.
This argument does not raise a genuine issue of fact concerning the actually existence of the revolving credit agreement and the disbursements under it. Sotavento has provided evidence of the revolving credit agreement and the note securing this agreement. The principal of Sotavento, Braunstein, has sworn in an affidavit dated October 10, 1997 that Sotavento disbursed monies to Morningside and that funds were advanced under the revolving credit agreement. The general partner of Morningside, Lemieux, has also sworn in an affidavit, dated October 7, 1997, that Sotavento provided funds that were used by Morningside. Furthermore, there are receipts, attached to Braunstein's affidavit as Exhibit F, bearing a signature purporting to be that of Charles Lemieux, which offer further evidence that some type of loans were made by Sotavento for the benefit of Morningside.[7] Thus, there is sufficient cumulative evidence to establish that funds were disbursed by Sotavento and that Morningside did receive consideration. The evidence submitted by Morningside does not meet the burden of raising an issue of fact.
Therefore, the motion for summary judgment should be granted as to liability under the note, but denied as to actual damages. While summary judgment is applicable as to the liability of Morningside under the note, see discussion supra, the arguments advanced by Morningside do raise a genuine issue of CT Page 7802 material fact as to the actual amount owed Sotavento and whether Sotavento can eventually substantiate its claims for the specific amount allegedly owed. Practice Book § 385, now Practice Book (1998 Rev.) § 17-50.[8]
There are several examples of conflicting evidence which preclude the granting of summary judgment as to damages. Many of the conflicts are found in the schedule prepared by Sotavento which allegedly accounts for money received and disbursed by Sotavento on behalf of Morningside. (Deposition of Braunstein, December 19, 1997, Exhibit 16; Affidavit of Braunstein, October 10, 1997, Exhibit D). One inconsistency with the schedule concerns the actual debt owed. While the complaint seeks payment on the $102,895.28 allegedly owed, the schedule indicates that the balance owed Sotavento is a sum of $112,334.75. The reliability of the schedule is questionable in several other aspects. While the schedule reflects disbursements in the amount of $1,250.00 to "Friedman, Melitz Newman" and $1,000 to "Zahorsky", cancelled checks dated on the same date as the alleged disbursements indicate a disbursement of $2,500 to the former party and $2,000 to the latter. (Deposition of Braunstein, Exhibit 6).
Moreover, a comparison of the schedule and other evidence raises questions as to whether some of the disbursements were accurately recorded as for the welfare of Morningside. In particular, Morningside questions the disbursement of a sum of $50,000 on July 12, 1996. While the schedule shows that this sum was charged against Morningside, the check registry and the check itself indicate that the sum was for another partnership, Kings West, which had a similar revolving credit agreement with Sotavento. (Deposition of Braunstein, Exhibits 5 and 6). Furthermore, in its memorandum of law in opposition to the motion for summary judgment, Morningside points out several other questionable advances that may affect the total amount of money due to Sotavento. Of concern to Morningside is a loan advance of $56,750.00 made to Lemieux and a $5,000 advance made to the law firm of Tyler, Cooper Alcorn. Morningside claims that these monies were not advanced for the benefit of Morningside but rather for personal uses. (See Affidavit of Braunstein, December 19, 1997.)
As evidenced by the examples above, there are genuine issues of fact as to damages that need to be resolved. Therefore, summary judgment as to the amount of money that CT Page 7803 Morningside owes Sotavento under the revolving credit agreement is inappropriate and best decided at hearing. Accordingly, summary judgment is granted in favor of plaintiff Sotavento Corporation as to liability only.
 CONCLUSION
In the case of Standish v. Sotavento Corp. (the derivative action), the motion for summary judgment is granted in favor of the defendant Sotavento. In the case of Sotavento Corp. v.Morningside Partners, LP. (the debt action), summary judgment is granted as to liability only as against the defendant Morningside Partners, LP.
DAVID W. SKOLNICK, JUDGE