[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION 
On April 5, 1994, the plaintiff, Jane C. Edmundson, filed a complaint against the defendant, American Home Assurance Company. The plaintiff alleges that she suffered property loss due to the professional negligence of Attorney Robert A. Hall, Jr., the defendant's insured.
A brief description of the factual and procedural background leading up to the present action is necessary. The plaintiff and Hall had an attorney-client relationship from 1970 until April of 1993. Hall provided services including, inter alia, preparing tax returns and monitoring her ex-husband's earnings to determine if he was obligated to pay alimony. In June 1989, Hall encouraged the plaintiff to invest in securities offered by Stanwood Security Systems, Inc., a company in which Hall had an interest as an officer, co-owner and principal shareholder. The plaintiff invested $50,000 in the securities. The company eventually defaulted on the securities. In a complaint filed on or about September 30, 1993, the plaintiff brought an action alleging five counts against Hall. The first two counts are relevant to the present action. In count one, the plaintiff alleged that Hall breached his fiduciary duties by self-dealing, and in count two, she alleged that Hall violated the Rules of Professional Conduct. Hall's insurance carrier, the defendant in this action, refused to defend Hall against the allegations on the ground that the CT Page 4036 claims were excluded from the policy's coverage. On February 18, 1994, a stipulated judgment entered against Hall in the amount of $116,000 for a breach of fiduciary duty. Hall paid the plaintiff $20,000 and assigned to her all of his rights under his insurance policy. The plaintiff then brought the present action against the insurance company.
In the present action, the plaintiff alleges in the first count of the complaint that the defendant violated General Statutes § 38-175 (now § 38a-321) which mandates that an insurance company shall become absolutely liable whenever a loss occurs under such policy. The plaintiff alleges in the second count that the defendant breached its contract with Hall by declining coverage and not defending him in the earlier action. She further contends that even if the defendant did not breach its duty to defend, the doctrines of res judicata and collateral estoppel bar it from challenging the judgment against Hall, and therefore the defendant is obligated to indemnify Hall for his losses.
On June 20, 1994, the defendant answered the plaintiff's complaint and filed four special defenses. The defendant claims in its special defenses that the claims against Hall did not arise out of his work as an attorney, but arose out of activities involving a separate business enterprise, and are therefore excluded under the terms of the policy.
"The duty to defend has a broader aspect than the duty to indemnify and does not depend whether the injured party will prevail against the insured." Missionaries of the Company ofMary, Inc. v. Aetna Casualty Surety Co., 155 Conn. 104, 110,230 A.2d 21 (1967). "The established rule of law in Connecticut is that the duty of an insurer to defend its insured is determined by the allegations in the complaint brought against the insured. . . . The duty to defend means that the insurer will defend the suit, if the injured party states a claim which . . . is for an injury `covered' by the policy; it is the claim which determines the insurer's duty to defend. . . . The seriousness with which the courts take this duty is exemplified by the fact that the duty to defend must be exercised regardless of whether the original suit is totally groundless or regardless of whether, after full investigation, the insurer got information which categorically demonstrates that the alleged injury is not in fact covered. . . . In addition, this contractual duty to defend its insured must be exercised by the insurer irrespective of the CT Page 4037 insurer's ultimate liability to pay a judgment under its policy, so long as the allegations of the complaint fall within the coverage. . . ." (Citations omitted; internal quotation marks omitted.) Krevolin v. Dimmick, 39 Conn. Sup. 44, 47-8,467 A.2d 948 (Super.Ct., 1983).
"The determination of the question whether [the defendant] has a duty to defend the original action . . . depends upon whether the complaint in that action stated facts that appear to bring the plaintiffs' claims of damages within the policy coverage. . . . [T]he duty to defend means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury covered by the policy; it is the claim which determines the insurer's duty to defend. . . . [A] duty to defend an insured arises if the complaint states a cause of action which appears on its face to be within the terms of the policy coverage. . . ." (Citations omitted; internal quotation marks omitted.) Schwartz v. Stevenson, 37 Conn. App. 581, 584,657 A.2d 244 (1995). Moreover, the supreme court has ruled that an insurer who denies coverage is liable for a settlement made by an insured if the insured is later found to be covered. Aldermanv. Hanover Insurance Group, 169 Conn. 603, 612, 363 A.2d 1102
(1975).
The insurance policy provides, in a section entitled "Coverage," that the defendant agrees "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of any claim or claims, including claim(s) for personal injury, first made against the insured and reported to the company during the policy period or extended reporting period, arising out of any act, error or omission of the insured in rendering or failing to render professional services for others in the insured's professional capacity as a lawyer, fiduciary or Notary Public, and caused by the insured or any other person whose acts, errors or omissions the insured is legally responsible, except as excluded or limited by terms, conditions and exclusions of this policy." It also provides in a section entitled "EXCLUSIONS" that "[the] policy does not apply: . . . (f) to any claim arising out of an insured's activities as an officer or director of any employee trust, charitable organization, corporation, company or business other than that of the Named Insured." Another provision upon which the defendant relies is the exclusion that "[the] policy does not apply: (g) to any claim made by or against or in connection with any business enterprise (including the ownership, maintenance or CT Page 4038 care of any property in connection therewith), not named in the Declarations, which is owned by any insured or in which any insured is a partner, or employee (except where he is an employee solely by virtue of having been retained to perform legal services) or which is directly or indirectly controlled, operated, or managed by any insured in a non-fiduciary capacity."
The plaintiff contends that for many years Hall had consulted her on financial issues as her attorney, and that the insurance policy covers Hall's conduct at issue. The defendant claims that the conduct described in the complaint against Hall was beyond the ordinary activities of someone in the legal profession. It asserts that the claims arose out of Hall's activities as an officer or director of a corporation, company or business. The defendant compares Hall's actions in encouraging the plaintiff to invest in his company to that of a salesman.
The plaintiff alleged in her complaint in the action against Hall that, despite knowing that the plaintiff was not a qualified investor, he "wrote a letter to the plaintiff, accompanied by promotional material . . . extolling the virtues of the proposed offering, stating `Jane, I believe this to be a sound investment offering a well above average return and would be extremely delighted if you were to be one of the investors."' Exhibit A, Paragraph 14. She further alleged that Hall "wrote another letter urging his client to buy . . . and then made a follow up sales call to his client." Exhibit A, paragraph 15. In the first count, the plaintiff stated that "[a]s her lawyer and financial advisor, defendant Hall owed plaintiff a fiduciary duty, owed her the highest duty of loyalty and care, and was obligated to deal with her fairly. . . . Defendant Hall breach that duty by self dealing, by advising her to enter into a financial investment for which he knew would enrich himself at the expense of his client." Exhibit A, Count 1, Paragraphs 18 and 19. In the second count, the plaintiff alleged that Hall violated Rules 1.7(b) and 1.8 of the Rules of Professional Conduct. Exhibit A, Count 2, Paragraph 18.
The court finds that the allegations of the plaintiff's complaint against Hall do not constitute claims of legal malpractice. Hall did not act in his capacity as an attorney in soliciting investments from the plaintiff. In St. Paul Fire Marine Ins. Co. v. Shernow, 222 Conn. 823, 828, 610 A.2d 1281
(1992), the supreme court ruled that "[i]n determining whether a particular act is of a professional nature or a "professional CT Page 4039 service" we must look not to the title or character of the party performing the act, but to the act itself."
Moreover, the plaintiff's allegations in count two that the defendant violated the professional rules of conduct in self-dealing and conducting business transactions with a client do not of themselves constitute a cause of action for malpractice. Noblev. Marshall, 23 Conn. App. 227, 231, 579 A.2d 594 (1990). "Courts in other jurisdictions have refused to interpret statutes that govern attorney conduct so as to give rise to actions of malpractice." Mozzochi v. Beck, 204 Conn. 490, 501 n. 7,529 A.2d 171 (1987). Our own code includes a preamble that clarifies this issue in Connecticut. It states, in part, that a "[v]iolation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. . . . They are not designed to be a basis for civil liability. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty." Practice Book, Rules of Professional Conduct, Preamble (1986; see Mozzochi v. Beck,
supra, 204 Conn. 501 n. 8; Noble v. Marshall, supra, 23 Conn. App. 231. Because the plaintiff solely relied on violations of the professional code as a basis for the second count of the complaint against Hall, the court does not find that it sets forth a cause of action for legal malpractice.
The plaintiff nevertheless contends that the issue as to coverage could have been raised in the earlier action. She claims that because the defendant was in privity with Hall, and chose not to defend him in the earlier action, it is collaterally estopped from challenging the amount it owes to the plaintiff. The defendant contends that they are under no obligation to indemnify Hall because the settlement entered into with Hall was not a reasonable one.
"The doctrines of res judicata and collateral estoppel are well established. The two doctrines protect the finality of judicial determinations, conserve the time of the court and prevent wasteful relitigation . . . . Res judicata, or claim preclusion, is distinguishable from collateral estoppel, or issue preclusion. Under the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim. In contrast, collateral estoppel precludes a party from relitigating issues and facts actually and necessarily CT Page 4040 determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . ." (Citations omitted; internal quotation marks omitted.) Weiss v.Statewide Grievance Committee, 227 Conn. 802, 818, 633 A.2d 282
(1993).
"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action." (Citations omitted; emphasis deleted; internal quotation marks omitted.) Jackson v. R. G. Whipple,Inc., 225 Conn. 705, 714-15, 627 A.2d 374 (1993). The issue in the present case, whether the plaintiff's claim was excluded from Hall's insurance policy with the defendant, did not arise in the action against Hall. The doctrines of res judicata and collateral estoppel, therefore, do not prevent the defendant from challenging the amount the plaintiff claims the defendant owes its insured.
The issues are found in favor of the defendant and judgment may enter in the defendant's favor.