[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Robert A. Hall, Jr., an attorney, admitted to the Connecticut Bar, appeals pursuant to Practice Book § 2-38
from a final decision of the Connecticut Statewide Grievance Committee ("Grievance Committee") dated April 17, 1998, reprimanding him for a violation of rule 1.8(a)(1) of the Rules of Professional Conduct, which were in effect in 1989. That rule provided, in pertinent part: "A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless: (1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client. . . ." Practice Book § 2-38 provides that this appeal shall be conducted by the court without a jury and shall be confined to the record. CT Page 5125
The factual background is as follows. Jane C. Edmundson received a letter dated June 7, 1989, from the plaintiff advising of an investment opportunity in a company called Stanwood Security Systems, Inc. The plaintiff was an officer and director of Stanwood Security Systems, Inc. Prior to 1989, the plaintiff had provided legal advice to Ms. Edmundson and her husband, and had also prepared tax returns for Ms. Edmundson.
Enclosed in the June 7, 1989 letter to Ms. Edmundson was a copy of a 23 page "private placement memorandum" (dated June 7, 1989) explaining the details of the debenture offer. The placement memorandum for the Stanwood offering contained certain explicit restrictions on who was eligible to purchase the debentures. Included in those restrictions on the offer were the following: (1) It was limited to "solely Connecticut residents;" and, (2) It was limited, under a section entitled "Suitability Standards", to individuals who qualified as "accredited investors." That term was defined in the placement memorandum as a person "whose individual net worth; or joint net worth within [a] spouse . . . exceeds numbers 1 million dollars" or "who had an individual income in excess of $200,000 in each of the two most recent years . . . and has a reasonable expectation of reaching the same income level in the current year . . ." (Return of Record ("ROR"), Item 1, pp. 32-33.)
The plaintiff knew at the time of the June 7, 1989 placement memorandum that Ms. Edmundson was living in New York City. Additionally, the plaintiff had provided Ms. Edmundson with tax advice concerning her assets and investments for a number of years prior to 1989, and to that extent, was aware of her financial situation.
Ms. Edmundson received another letter, dated June 20, 1989, from the plaintiff which enclosed additional financial information about the "current operating cashflows" of Stanwood. (ROR, Item 1.) Additionally, Ms. Edmundson spoke with the plaintiff by telephone about her possible purchase of the Stanwood debentures. Ultimately, the plaintiff solicited a $50,000 investment in the debentures from Ms. Edmundson. (ROR, Item 1, Exhibits D, H, p. 2; Item 17, pp. 13, 33.) The plaintiff advised Ms. Edmundson that the debenture offer was "a sound investment offering." (ROR, Item 1, Exhibit C.)
Subsequently, in 1993, Stanwood suffered financial reverses resulting in the company's defaulting on the securities offered CT Page 5126 and Ms. Edmundson lost all but $8,591 of her $50,000 investment. (ROR, Item 1, Exhibit D, p. 2.) In October, 1993, Ms. Edmundson filed a five count complaint against the plaintiff. (ROR, Item 1, p. 15.) The first count of the complaint alleged that the plaintiff breached his fiduciary duty to Ms. Edmundson, which duty had arisen as a result of the attorney client relationship between the two. (ROR, Item 1, Exhibit D.) The first count also alleged that the plaintiff was aware that Ms. Edmundson was not a Connecticut resident or an "accredited investor" as defined within the private placement memorandum. In February, 1994, the plaintiff entered into a judgment by stipulation on the first count of the complaint, under which he paid Ms. Edmundson $20,000 in settlement of her claim. (ROR, Item 1, Exhibit H; Item 7.)
On May 27, 1997, Ms. Edmundson filed a grievance complaint against the plaintiff, which was forwarded to the Stamford-Norwalk Judicial District Grievance Panel. (ROR, Items 1, 4.) On July 23, 1997, the Stamford-Norwalk Judicial District Grievance Panel filed a finding that probable cause existed that the plaintiff had violated rule 1.8(a) of the Rules of Professional Conduct, referencing the 1997 version of the Rule. (ROR, Item 12.)
On December 3, 1997, a hearing was held before a reviewing committee composed of Attorney Lewis A. Hurwitz and Attorney Margaret P. Mason. Before the hearing, the plaintiff filed a motion with the reviewing committee which claimed that the Stamford-Norwalk panel incorrectly considered the 1997 version of rule 1.8(a) of the Rules of Professional Conduct, instead of the rule as it existed at the time of the conduct complained of, in 1989. At the hearing, the reviewing committee determined that, contrary to the Stamford-Norwalk panels finding, they would consider rule 1.8(a) of the Rules of Professional Conduct as it existed in 1989, at the time of the conduct complained of by Ms. Edmundson. (ROR, Item 17, p. 5.)
Subsequent to the hearing, the reviewing committee issued a proposed decision which found by clear and convincing evidence that the plaintiff had violated rule 1.8(a) of the Rules of Professional Conduct as it existed in 1989. (ROR, Item 22.) The committee recommended that the Grievance Committee reprimand the plaintiff. On April 17, 1998, the defendant Grievance Committee adopted the reviewing committee's proposed decision and reprimanded the plaintiff. (ROR, Item 24.) It is from that decision of the Grievance Committee that the plaintiff has filed this administrative appeal. CT Page 5127
Here, the plaintiff advances a number of arguments in support of his administrative appeal. First, the plaintiff contends that the Grievance Committee lacked jurisdiction to discipline him because Superior Court judges were already aware of the alleged misconduct, but declined to refer the plaintiff to the Grievance Committee. In support of this argument, the plaintiff relies on Practice Book § 2-32(a)(2)(F) which provides in pertinent part:
 (a) Any person, or a grievance panel on its own motion, may file a written complaint alleging attorney misconduct whether or not such alleged misconduct occurred in the actual presence of the court. Complaints against attorneys shall be filed with the statewide bar counsel. Within seven days of the receipt of a complaint the statewide bar counsel shall review the complaint and process it in accordance with paragraphs (1) or (2) as follows:
 (2) refer the complaint to the chairperson of the statewide grievance committee or an attorney designee of the chairperson and to a non-attorney member of the committee, and the statewide bar counsel in conjunction with the chairperson or attorney designee and the non-attorney member, shall if deemed appropriate, dismiss the complaint on one or more of the following grounds:
 (F) the complaint alleges misconduct occurring in a pending superior court, appellate court or supreme court action and the court has not been made aware of the allegations or in which the court has been made aware of the allegations of misconduct and has not referred the matter to the statewide bar counsel or statewide grievance committee. . . .
Hall's contention is that two superior court judges had already been made aware of the allegations of misconduct during the course of the related civil lawsuits. Since neither judge referred the matter to the Grievance Committee, the Grievance Committee was required to dismiss the grievance complaint under §2-32(a)(2)(F). Hall's argument fails for two reasons: it was not presented to the Grievance Committee at the original hearing, and § 2-32(a)(2)(F) does not mandate dismissal under the facts here.
In reviewing an administrative decision, the trial court is not to retry the case. McDonald v. Commissioner of IncomeCT Page 5128Maintenance, 43 Conn. App. 39, 46 (1996). Rather, the court is limited to reviewing the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct. Weiss v. Statewide Grievance Committee, 227 Conn. 802,812 (1993). With some exceptions, claims not pursued at the administrative hearing cannot be pursued for the first time on appeal to the Superior Court. Connecticut Department ofAdministrative Services v. Connecticut Employees' Review Board, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 538658 (December 12, 1995, Hodgson, J.); see, e.g., Burnham v. Administrator, 184 Conn. 317, 323 (1981). To hold otherwise would be to deprive the Grievance Committee of the opportunity to consider the applicable facts, make its ruling, and state the reasons for its action.
In Winer v. Statewide Grievance Committee, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 506513 (November 9, 1992, Maloney, J.) (7 C.S.C.R. 1301), the court denied the plaintiff an opportunity to raise a due process argument for the first time upon appeal for failure to utilize other available remedies. Specifically, the plaintiff failed to make any objections during the hearing, nor did he take advantage of the opportunity to raise objection in his post hearing submission pursuant to Practice Book § 27J(g). Citing the Supreme Court decision in Dragan v. Connecticut Medical Examining Board,233 Conn. 618, 633 (1992), the court held "that the failure to raise a procedural claim or the failure to utilize a remedy available to cure a procedural defect can constitute a waiver of the right to object to the alleged defect."
Citing Dragan v. Connecticut Medical Examining Board, supra, as authority, another court reached the same conclusion in Cramerv. Statewide Grievance Committee, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 562467 (January 31, 1997, McWeeny, J.). The court denied the plaintiff the opportunity to raise an issue of a denial of a continuance for the first time upon appeal. The court found that the plaintiff failed to raise any objections during the hearing, nor in his reply brief to the decision as allowed under Practice Book § 27J(g).
It is undisputed that Hall failed to raise the issue of jurisdiction under § 2-32(a)(2)(F) during the hearing before the SGC. Hall also failed to raise this issue in his reply brief of CT Page 5129 April 6, 1998 pursuant to Practice Book § 27J(g). Therefore, the Grievance Committee never had an opportunity to hear this issue and make a ruling upon its merits. Because Hall failed to raise this issue before the Grievance Committee, Hall is barred from first raising this issue on appeal to this court.
Secondly, Hall argues that § 2-32(a)(2)(F) requires mandatory dismissal. In so doing, Hall cites two cases, Katz v.Statewide Grievance Committee, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 557186 (November 15, 1996, Maloney, J.), and Budny v. Statewide GrievanceCommittee, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 560637 (June 9, 1997, Levine, J.) (19 Conn. L. Rptr. 592). Both decisions are distinguishable from the present case.
In Katz v. Statewide Grievance Committee, supra, a court appointed attorney in a dissolution of marriage action was alleged to have charged excessive fees as guardian ad litem for the couples' minor child. These allegations were brought to the court's attention by way of a motion seeking the removal of Katz as guardian ad litem. Though the court denied the motion, it reserved the right to rule on the propriety of Katz's bill on another day. Therefore, when the Grievance Committee received and ruled upon the complaint of misconduct against Katz, they did so where the precise issue that was the basis of their decision, at the time of the decision, was pending before a court where Katz and the complainant were parties. Such action was found to be an abuse of discretion under § 2-32(a)(2)(F).
In Budny v. Statewide Grievance Committee, supra, an attorney was alleged to have improperly requested a writ of capias to enforce a subpoena against a fellow attorney and deposition witness during a wrongful termination of employment case. The attorney against whom the writ was enforced filed a motion for a finding of professional misconduct, claiming that the writ was achieved through improper ex parte proceedings. During a hearing on the motion, the parties reached an agreement whereby the capias was quashed. The court in Budney assumed that in not ruling upon the allegations of misconduct contained in the motion, the judge had found the allegations to be baseless. Therefore, when the SGC later heard a complaint based upon identical issues of misconduct, and issued a reprimand, it was ruled an abuse of discretion under § 2-32(a)(2)(F). CT Page 5130
The misconduct in both Katz and Budny, occurred during a pending court action, just as described in § 2-32(a)(2)(F). InKatz the judge reserved the right to rule on the issue of misconduct at a later date. In Budny, the judge was assumed to have ruled on the issue by quashing the capias and settling the dispute between the opposing parties. Therefore, in both cases, the misconduct occurred in a pending court action in which the court had been made aware of the allegations of misconduct and not referred the matter to the Grievance Committee.
The present fact pattern concerning Hall is distinguishable. First, the alleged misconduct that is now being argued did not "occur" within a court action of any sort. Rather, Hall stands accused of improperly soliciting investments from his clients, in particular Ms. Edmundson. Second, the alleged misconduct is not the "subject of a pending court action," as it was in Katz andBudny. Of the two cases that concerned the present subject material, Hall was only party to one, Edmundson v. Hall, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 308345, and that case settled out of court prior to a decision on the merits. The presiding judge never ruled on Hall's alleged misconduct.
Furthermore, the interpretation of § 2-32(a)(2)(F) in Katz
and Budny does not support mandatory dismissal in these circumstances. This is expressed quite clearly by the court inBrignole v. Statewide Grievance Committee, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 572335 (December 29, 1997, Aurigemma, J.):
 "First, he assumes that Practice Book § 2-32(a)(2)(F) contains a mandatory provision that the Statewide Grievance Committee dismiss any claim based on conduct occurring in a pending action of which a Superior Court Judge is aware, but which the Judge has declined to refer to the grievance committee. This assumption ignores the words "where appropriate" in § 2-32(a)(2), which suggests that dismissal is not mandatory, but discretionary, depending on the circumstances."
Accordingly, for all of the aforementioned reasons, Hall's arguments based upon Practice Book § 2-32(a)(2)(F) do not warrant a disturbance of the Grievance Committee's action. The Grievance Committee properly exercised jurisdiction over the complaint. Doev. Statewide Grievance Committee, 240 Conn. 671, 680 (1997). CT Page 5131
The plaintiff next argues that the committee erred in applying rule 1.8(a) of the Rules of Professional Conduct to an alleged act of investment advice, which was neither prohibited nor restricted under the applicable version of the rule.
Rule 1.8(a) of the Rules of Professional Conduct, as it existed 1989, provided:
 A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
 (1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;
 (2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
(3) The client consents in writing thereto.
Rules of Professional Conduct 1.8 (1989).
Hall contends that he was not in violation of rule 1.8(a) of the Rules of Professional Conduct as it existed in 1989. To buttress this condition, Hall primarily relies upon the amended Rules of Professional Conduct (amended in 1992 1997). Rule 1.8(a) was amended as follows:
 A lawyer shall not enter into a business transaction, including investment services, with a client or former client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client or former client unless:
Rules of Professional Conduct 1.8 (1997).
Hall argues that the inclusion in the amended rule 1.8(a) of the Rules of Professional Conduct of investment services demonstrates that the former rule 1.8(a) did not mean to include such services under the heading "business transactions." Hall also argues that Ms. Edmundson was not a client of his under rule 1.8(a) of the Rules of Professional Conduct as it existed in CT Page 5132 1989. Rather, according to Hall, Ms. Edmundson was a former client, and since former clients were not protected by rule 1.8 (a) until it was amended in 1992, Ms. Edmundson does not fall within the rule. Both of these arguments based upon statutory interpretation are unavailing.
There is a lack of authority in Connecticut concerning what constitutes a "business transaction" under rule 1.8(a) of the Rules of Professional Conduct. The amended Rules of Professional Conduct annotated contain no commentary on whether the term "investment services" was added to clarify or expand upon "business transactions." Therefore, a look to other jurisdictions that operate under rules similar to rule 1.8(a) of the Rules of Professional Conduct is helpful.
In Matter of Dietrich, 600 N.Y.S.2d 550 (1993), the Appellate Division of the Supreme Court of the State of New York suspended an attorney from the practice of law for entering into a business relationship with clients without first advising them to seek outside counsel for independent advice. Matter of Dietrich,
supra, 550-551. Particularly noteworthy is the court's finding that the attorney had violated the Lawyers Code of Professional Responsibility rule DR 5-104(a) which limits business relations with a client. Id., 550. The court held that it was a violation of this rule for an attorney to solicit investments in a real estate development corporation from his clients. Id., 551.
The Lawyers Code of Professional Responsibility rule DR 5-104 provides:
Limiting Business Relations with a Client
 A. A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise professional judgment therein for the protection of the client, unless the client has consented after full disclosure.
In Matter of Smyzer, 108 N.J. 47 (1987), the New Jersey Supreme Court upheld a Disciplinary Review Board's decision to disbar an attorney for improperly entering into business transactions with a client under rule DR 5-104(a) of the Rules of Professional Conduct. DR 5-104(a) of the Rules of Professional Conduct provided as follows: CT Page 5133
CONFLICT OF INTEREST: PROHIBITED TRANSACTIONS
 (a) A lawyer shall not enter into a business transaction or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless (1) the transaction and terms in which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in manner and terms that should have reasonably been understood by the client, (2) the client is advised of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent counsel of the clients choice on the transaction, and (3) the client consents in writing thereto.
Specifically, the court found that the attorney's solicitation of investments from his clients for investment in a corporation in which he was the principal officer and stockholder was in violation of DR5-104(a). Id., 54-55. "Respondent's conduct in these matters constituted a clear violation of DR 5-104(a), which prohibits an attorney from entering into business transactions with a client if the two have differing interests. . . ." Id., 54.
In both of the above cases, investment services were taken to constitute business transactions. In Smyzer, supra, the fact pattern almost identically coincides with the present matter. Therefore, since there is a lack of authority within Connecticut as to what constitutes a business transaction within rule 1.8(a) of the Rules of Professional Conduct, this court will adopt the rationales of surrounding jurisdictions that operate under similar Rules of Professional Conduct. This court holds that investment services are and were covered by rule 1.8(a) as it existed in 1989, and the committee's conclusion in that regard was correct.
Hall next argues that his dealings with Ms. Edmundson were not governed by rule 1.8(a) because Ms. Edmundson was not a client of his at the time they entered into the investment contract. Rather, Ms. Edmundson was a former client, and since former clients were not protected by rule 1.8(a) until it was amended in 1992, Ms. Edmundson did not fall within the rules bounds. Such a reading is not tenable, and, in addition, the CT Page 5134 record clearly and convincingly demonstrates that Ms. Edmundson was a current client of Hall's at the time of the transaction.
Black's Law Dictionary defines client as "a person who employs or retains an attorney to appear for him in courts, advise, assist, and defend him in legal proceedings, and act for him in any legal business." Black's Law Dictionary (6th Ed. 1990). The record indicates that Hall provided legal advice in the area of taxes to Ms. Edmundson from at least 1980 until 1993. (ROR, Item 1.) The record contains a letter from Ms. Edmundson to Hall regarding the filing of her 1988 taxes. (ROR, Item 1, p. 5.) There is another letter from Hall to Ms. Edmundson regarding existing tax matters which is dated August 1, 1989. (ROR, Item 1, p. 6.) On page 7 of the record is a letter prepared by Hall that states, "I represent Jane C. Edmundson. . . ." This letter was prepared on Edmundson's behalf concerning real estate possessions situated in California. The letter was dated December 14, 1992. (ROR, Item 1, p. 7.)
All of this evidence leads to the conclusion that Hall maintained an attorney-client relationship with Ms. Edmundson that spanned some 13 years. The year 1989 falls within this time period. Therefore, there is substantial evidence in the record to support the finding that Ms. Edmundson was a client of Hall's at the time they entered into the investment transaction in 1989.
Hall also makes an argument that the Grievance Committee was bound by a previous finding in Edmundson v. American HomeAssurance, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 312290 (May 1, 1999, Belinkie, S.T.R.) (17 Conn. L. Rptr. 67) that Hall "did not act in his capacity as an attorney in soliciting investments from Ms. Edmundson." This contention fails for two reasons. First, the Grievance Committee is not bound by any of the conclusions reached in Edmundson v.American Home Assurance, supra. The Grievance Committee was not a party to the action. Therefore, the doctrines of res judicata and collateral estoppel are not applicable. Weiss v. StatewideGrievance Committee. supra, 227 Conn. 819. Second, that Hall did not act in his capacity as an attorney during the course of this transaction does not collaterally mean that Hall and Ms. Edmundson did not have an underlying attorny[attorney]-client relationship at the time of the transaction. In fact, in the Memorandum of Decision, the court specifically states, Ms. Edmundson "and Hall had an attorney-client relationship from 1970 until April of 1993." (ROR, Item 1, p. 124.) CT Page 5135
The subject version of rule 1.8(a) of the Rules of Professional Conduct prohibited an attorney from entering into a business transaction with a client unless its terms were both fair and reasonable to the client. Here, the plaintiff stipulated to a judgment in a civil lawsuit in favor of Ms. Edmundson on a count which alleged that the plaintiff had breached his fiduciary duty to Ms. Edmundson as a result of the subject transaction. His stipulation notwithstanding, the plaintiff contends that the transaction was fair and reasonable to Ms. Edmundson.
The plaintiff solicited Ms. Edmundson's investments in spite of the fact that she was not entitled to purchase the debentures according to the private placement memorandum submitted by the plaintiff's company.
In order to qualify to purchase the debentures offered by Hall, Ms. Edmundson would have had to have met two threshold requirements. First, she had to be a Connecticut resident. Second, she had to have a net worth of at least $1 million or income for the three previous years of $200,000. Ms. Edmundson met neither of these requirements. As her tax attorney, Hall certainly was aware that Ms. Edmundson resided in New York. In fact, he admitted this much at the Grievance Committee hearing. (ROR, Item 7, pp. 36-37.) Hall also should have had some general idea as to what Ms. Edmundson's net worth was, for he had been preparing her tax returns for the previous nine years. At the very least, Hall was aware that her previous three years of income did not approach $200,000.
Furthermore, Hall solicited the investment from Ms. Edmundson on his own law office stationery. (ROR, Item 1, p. 2.) Therefore, there is the ever present possibility of confusion upon receipt of the debenture offering as to whether Hall was offering Ms. Edmundson legal advice as to a good investment, or offering Ms. Edmundson a unique opportunity to invest in a corporation upon proper and full disclosure that he was a principal of said corporation. Regardless of Hall's intention, because the offering appeared upon Hall's legal stationery, the possibility for confusion was overwhelming.
There is substantial evidence in the record to support the Grievance Committee's conclusion that the transaction was not fair and reasonable to the client, Ms. Edmundson. The plaintiff overreached in soliciting an investment from a client, and CT Page 5136 therefore violated rule 1.8(a) of the Rules of Professional Conduct extant in 1989.
For all of the foregoing reasons, the plaintiff's administrative appeal from the decision of the Statewide Grievance Committee is dismissed.
Michael Hartmere, Judge